**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| **VINCENT J. COLOMBINI, BILLY McGUIRE, MARTIN L. HEIFNER, ROBERT J. SWISHER, DERRICK S. LINK, JOHN D. GROSS, DEBORAH K. (FORTIER) ROGERS, MICHAEL A. GARMAN, JERRY W. KITTLE, CARISA A. SNYDER, DEBORAH K. SMITH, EPHRAIM N. SHIELDS, and MARSHALL PHILLIPS, JR.,** individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Defendant. | ) |

Case No.: _____

**INDEX OF EXHIBITS TO PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, by counsel, files this Index of Exhibits identifying the exhibits attached to Plaintiffs' Class Action Complaint for Declaratory Judgment.

| Exhibit | Title | Page(s) |
|---|---|---|
| 1 | March 5, 2018 Institutional Disclosure of Adverse Event for Plaintiff Vincent J. Colombini | 5-6 |
| 2 | March 13, 2018 Institutional Disclosure of Adverse Event for Plaintiff Billy McGuire | 7-8 |
| 3 | March 5, 2018 Institutional Disclosure of Adverse Event for Plaintiff Martin L. Heifner | 9-10 |
| 4 | March 19, 2018 Institutional Disclosure of Adverse Event for Plaintiff Robert J. Swisher | 11-12 |
| 5 | March 20, 2018 Institutional Disclosure of Adverse Event for | |

|   | Plaintiff Derrick S. Link | 13-14 |
|---|---|---|
| 6 | March 5, 2018 Institutional Disclosure of Adverse Event for Plaintiff John D. Gross | 15-16 |
| 7 | March 20, 2018 Institutional Disclosure of Adverse Event for Plaintiff Deborah K. (Fortier) Rogers | 17-19 |
| 8 | March 14, 2018 Institutional Disclosure of Adverse Event for Plaintiff Michael A. Garman | 20-22 |
| 9 | April 25, 2018 Institutional Disclosure of Adverse Event for Plaintiff Jerry W. Kittle | 23-26 |
| 10 | March 20, 2018 Institutional Disclosure of Adverse Event for Plaintiff Carisa A. Snyder | 27-28 |
| 11 | April 11, 2018 Institutional Disclosure of Adverse Event for Plaintiff Deborah K. Smith | 29-32 |
| 12 | February 5, 2018 Institutional Disclosure of Adverse Event for Plaintiff Ephraim N. Shields | 33-34 |
| 13 | April 16, 2018 Institutional Disclosure of Adverse Event for Plaintiff Marshall Phillips, Jr. | 35-36 |
| 14 | SF-95 Tort Claim form for Plaintiff Vincent J. Colombini | 37 |
| 15 | SF-95 Tort Claim form for Plaintiff Billy McGuire | 38-40 |
| 16 | SF-95 Tort Claim form for Plaintiff Martin L. Heifner | 41 |
| 17 | SF-95 Tort Claim form for Plaintiff Robert J. Swisher | 42-43 |
| 18 | SF-95 Tort Claim form for Plaintiff John D. Gross | 44-47 |
| 19 | SF-95 Tort Claim form for Plaintiff Deborah K. (Fortier) Rogers | 48-56 |
| 20 | SF-95 Tort Claim form for Plaintiff Michael A. Garman | 57-60 |
| 21 | SF-95 Tort Claim form for Plaintiff Jerry W. Kittle | 61-66 |
| 22 | SF-95 Tort Claim form for Plaintiff Carisa A. Snyder | 67-73 |
| 23 | SF-95 Tort Claim form for Plaintiff Deborah K. Smith | 74-79 |

| 24 | SF-95 Tort Claim form for Plaintiff Ephraim N. Shields | 80-83 |
| 25 | SF-95 Tort Claim form for Plaintiff Marshall Phillips, Jr. | 84-87 |
| 26 | August 7, 2018 VA denial letter for Plaintiff  Vincent J. Colombini | 88 |
| 27 | August 1, 2018 VA denial letter for Plaintiff Billy McGuire | 89-90 |
| 28 | July 30, 2018 VA denial letter for Plaintiff Martin L. Heifner | 91 |
| 29 | September 25, 2018 VA denial letter for Plaintiff Robert J. Swisher | 92 |
| 30 | September 27, 2018 VA denial letter for Plaintiff Derrick S. Link | 93-94 |
| 31 | September 27, 2018 VA denial letter for Plaintiff John D. Gross | 95-96 |
| 32 | November 2, 2018 VA denial letter for Plaintiff Deborah K. (Fortier) Rogers | 97 |
| 33 | November 6, 2018 VA denial letter for Plaintiff Michael A. Garman | 98 |
| 34 | November 6, 2018 VA denial letter for Plaintiff Jerry Kittle | 99 |
| 35 | November 28, 2018 VA denial letter for Carisa A. Snyder | 100 |
| 36 | September 24, 2018 VA denial letter for Deborah K. Smith | 101 |
| 37 | August 16, 2018 VA denial letter for Ephraim N. Shields | 102 |
| 38 | November 8, 2018 VA denial letter for Marshall Phillips, Jr. | 103 |

Respectfully submitted,

"/s/" David L. Farnbauch
David L. Farnbauch (#11187-45)
SWEENEY LAW FIRM
8019-B Lima Road
Fort Wayne, IN 46818
(260) 420-3137
Email: dlf@sweeneylawfirm.com

"/s/" Diana C. Bauer
Diana C. Bauer (#11906-64)
BAUER LEGAL LLC
429 E. Dupont Road #175
Fort Wayne, IN  46825
(260) 414-5582
Email:  dianabauerlegal@gmail.com

"/s/" Dennis R. Brown
Dennis R. Brown (#20813-49)
GEISLEMAN & BROWN, LLP
919 S. Harrison St., Ste. 100
Fort Wayne, IN  46802
(260) 420-2001
Email: dbrown@geislemanlaw.com

```
----------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                      Progress Notes
----------------------------------------------------------------------------
```

NOTE DATED: 03/05/2018 08:49
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
VISIT: 03/05/2018 08:49 FTW A NOTE-X

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: February 23, 2018 @ 0830

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
Conference room

Names and identity of those present:
 Vince Colombini- Veteran
 Dr. McBride- Chief of Staff
 Dr. Becker- Podiatrist
 Nicole Gust- HSS to COS


Discussion points of the adverse event:

Mr. Colombini complained of occasional swelling outside of the right ankle.
9/16/11 x-rays were completed of the foot and ankle that showed the foot had no
dislocations/no fractures, had small calcaneal spurs and had hammertoes. Ankle
x-ray were negative. He was diagnosed with accessory ossicle and referred to Dr.
Hammersley for surgery consult and seen on 3/16/12. The patient underwent
surgery on 3/23/12 for resection of calcaneal spur of the lateral right
calcaneus with reattachment and repair of peroneal retinaculum and excision of
peritendinous cartilaginous masses in the tendon sheath of the right foot.

The operative report suggests that Dr. Hammersley performed an excision of a
"lateral" spur from the patient's right calcaneus. However, the only way that a
lateral spur would be seen would be on an Os Calcis set of x-rays. This patient
only had foot and ankle radiologic views taken, which will superimpose the
calcaneus and will not show the lateral wall of the calcaneus. This patient did
not have any advanced imaging performed to confirm a lateral spur or ossicle.
The only spurring that is noted on the x-rays is superiorly and plantarly on the
right calcaneus. This spurring that is noted pre-operatively with no internal
changes. During surgery Dr. Hammersley took of tendon 'anchors' thinking they
were bone spurs. He tried to smooth bone and reattach tendon by screws. Dr.
Hammersley does not document if band was reattached. Pathology report indicated
that the specimens were healthy bone and good tendons.

o     Lack of or inappropriate diagnostic testing and studies do not support
surgical diagnosis. There is no way to know that the patient had any accessory
ossicles, spurring, or boney hypertrophy from the studies provided or
documentation of physical exam.
o     There is no change on x-rays from pre-op to post-op with the exception
of the bone anchors.


Offer of assistance, including arrangements for a second opinion, additional
monitoring, expediting clinical consultations, bereavement support:
```
                    ** THIS NOTE CONTINUED ON NEXT PAGE **
WORK COPY ========== UNOFFICIAL - NOT FOR MEDICAL RECORD ========== DO NOT FILE
COLOMBINI,VINCE J                                    Printed:03/06/2018 09:22
                    VA NORTHERN INDIANA HEALTHCARE SYSTEM
                      Pt Loc: OUTPATIENT              Ph:260 589 8522
========================= CONFIDENTIAL INFORMATION =========================
```

```
--------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                    Progress Notes
--------------------------------------------------------------------------
03/05/2018 08:49      ** CONTINUED FROM PREVIOUS PAGE **
```

Veteran was offered evaluation and treatment in the podiatry service if
indicated.


Advisement of 1151 claims process and right to file administrative
tort claim:  Veteran was informed of his rights to file a 1151 disability
claim and/or administrative Tort Claim. Financial Compensation after an injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
Veteran was given Jana Bakle's contact information to follow up with any
additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


                   Signed by: /es/ JANA M BAKLE
                              RISK MANAGER
                              03/05/2018 08:50

```
WORK COPY ========= UNOFFICIAL - NOT FOR MEDICAL RECORD ========== DO NOT FILE
COLOMBINI,VINCE J                                    Printed:03/06/2018 09:22
                   VA NORTHERN INDIANA HEALTHCARE SYSTEM
                      Pt Loc: OUTPATIENT              Ph:260 589 8522
=================== CONFIDENTIAL INFORMATION ===========================
```

**Page 6 of 103**

# Progress Notes

/es/ Holly K Becker, DPM
DPM
Signed: 05/31/2018 10:29

LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: MAR 13, 2018@14:42     ENTRY DATE: MAR 13, 2018@14:43:01
      AUTHOR: BAKLE,JANA M        EXP COSIGNER:
      URGENCY:                          STATUS: COMPLETED

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: March 7, 2018

Place of Discussion (Reason for any delay in the disclosure):  Marion
Conference room

Names and identity of those present:
 Billy McGuire- Veteran
 Dr. McBride- Chief of Staff
 Dr. Becker- Podiatrist
 Nicole Gust- HSS to COS

Discussion points of the adverse event:

Patient was initially encountered by Dr. Hammersley on 06/29/2012 where he
was diagnosed with a chronic rupture of the peroneus brevis tendon left
ankle, DM neuropathy, and difficulty walking. At this visit, conservative and
surgical correction were discussed with patient. Patient returned to see Dr.
Hammersley on 08/31/2012 and opted for surgical intervention. He was then
scheduled for a peroneus brevis tendon repair. The patient was consented for
Achilles Tendon Repair with Graft of the Left foot on 10/12/2012. The patient
was taken to the OR on that same day (10/12/2012) and a Repair of peroneus
brevis tendon with human dermal graft application, all left foot. Patient
received uneventful post-operative care until 02/27/2013.

The foot MRI report dated 01/10/2012 notes a thickening of the peroneal
longus tendon at its attachment to the medial cuneiform and base of the first
metatarsal. The ankle MRI report dated
01/10/2012 notes the peroneus longus and peroneus brevis are severely
tendinopathy and very enlarged. The ankle MRI showed a thickening of the
peroneal longus and peroneal brevis tendons. Neither of the tendons had a
tear. Upon, reviewing the images this surgery was not indicated. Also, the
Consent for this surgery was incorrect. The patient was consented for an
Achilles tendon repair with graft.

*       Inaccurate diagnosis
*       Treatment or procedure not performed correctly.
*       Use of inappropriate implants or hardware during surgery.

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
| --- | --- |
| MCGUIRE,BILLY<br>907 VILLA TERRACE<br>KENDALLVILLE, INDIANA  46755 | Printed at FORT WAYNE VA MEDICAL CENTER |

**EXHIBIT 2**

# Progress Notes

```
   *        Consent does not match the surgery performed.
```

Offer of assistance, including arrangements for a second opinion, additional
monitoring, expediting clinical consultations, bereavement support:

Mr. McGuire says that ankle is still very painful even while sitting. He was
offered a thorough evaluation with podiatry and is scheduled on 4-12-18.


Advisement of 1151 claims process and right to file administrative
tort claim:   The Veterans was informed of his rights to file a 1151
disability
claim and/or administrative Tort Claim. Financial Compensation after an
injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any
additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/13/2018 14:43

```
 LOCAL TITLE: PODIATRY NOTE
STANDARD TITLE: PODIATRY NOTE
DATE OF NOTE: MAR 01, 2018@10:47     ENTRY DATE: MAR 01, 2018@10:47:51
      AUTHOR: BECKER,HOLLY K      EXP COSIGNER:
      URGENCY:                         STATUS: COMPLETED
```

HPI: Patient is 69 y/o male PTC with his wife after Institutional Disclosure
for continued left ankle pain. Patient had surgery of the left ankle in 2012 for
a "ruptured peroneal tendon". However, the patient now has continued pain and
swelling with the ankle. He has difficulty walking and states that the pain is
aggravated with walking and standing! he has been given ankle braces to wear in
the past, but he has difficulty tying them so he has not worn them.  He
describes the pain to his ankle as sharp and burning. STates that the area is
always swollen, and the swelling worsens with walking.

PMH:
 29 Active Problems
   Peripheral Nerve Disease
   Obstructive Sleep Apnea (Adult) (Pediatric)
   Posttraumatic stress disorder

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
MCGUIRE, BILLY
907 VILLA TERRACE
KENDALLVILLE, INDIANA  46755

VISTA Electronic Medical Documentation
Printed at FORT WAYNE VA MEDICAL CENTER

```
--------------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                        Progress Notes
--------------------------------------------------------------------------------
```

NOTE DATED: 03/05/2018 08:37
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
VISIT: 03/05/2018 08:37 FTW A NOTE-X
INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: February 22,2018 @ 2:30pm

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
Conference room

Names and identity of those present:
 Martin Heifner- Veteran
 Dr. McBride- Chief of Staff
 Dr. Becker- Podiatrist
 Nicole Gust- HSS to COS

Discussion points of the adverse event:


Mr. Heifner was referred to Dr. Hammersley from another podiatrist for severe
pain in the left leg for about 15 days. MRI showed lesion and bruise of soleus
leg muscle. Dr. Hammersley documents that the MRI showed well defined mass in
medial head of the gastrocnemius and diagnosed the patient with ruptured muscled
with neoplasm of uncertain behavior at medial head of gastric. The MRI does not
support this diagnosis. Dr. Hammersley ordered the Veteran to wear a boot to
allow the muscle to heal. About 2 months later, Dr. Hammersley planned to
removed mass and repair of Achilles tendon with human dermal graft. Veteran was
sent to a community hospital for the surgery to be performed by Dr. Hammersley
on 6-17-14.  The 6-17-14 surgery report documents that Dr. Hammersley focused on
the medial gastrocnemius muscle and not the lateral soleus where the mass was
located. The surgery report also indicates that Dr. Hammersley used Fiber wire
in the muscle which is not the correct suture. Finally, the surgery report
suggest that Dr. Hammersley never repaired the Achilles Tendon that he said was
ruptured. The pathology from the mass that was removed showed fibroadipose
tissue and skeletal muscle with no specific diagnostic abnormality recognized.


He continued to have pain and was seen by Dr. Hammersley on 11-5-14 presenting
for a "new injury to lateral left posterior leg". An ultrasound was performed on
that date and the patient was diagnosed with a partial tear of the superficial
fascia of the left lateral gastrocnemius muscle. The patient was seen twice by
Dr. Hammersley between 11/5/14 and the date of surgery 9/25/15 (10 ? months
later).  Patient as surgery 9-25-15 for Left Achilles tendon repair with graft.
Dr. Hammersley operative narrative does not support Achilles Tendon Repair. He
also documents using the incorrect suture type for the procedure.

The timeframe of fixing the Acute Partial tear of the superficial fascia on the
left lateral gastrocnemius muscle was passed 21 days after the injury.

o       Lack of or inappropriate diagnostic testing.
o       Studies or imaging did not confirm surgical diagnosis or findings.


Offer of assistance, including arrangements for a second opinion, additional
                    ** THIS NOTE CONTINUED ON NEXT PAGE **
WORK COPY ========= UNOFFICIAL - NOT FOR MEDICAL RECORD ========== DO NOT FILE
HEIFNER,MARTIN LUTHER                           · Printed:03/09/2018 08:53
              VA NORTHERN INDIANA HEALTHCARE SYSTEM
                   Pt Loc: OUTPATIENT              Ph:(419)263-8023C
=========================== CONFIDENTIAL INFORMATION ===========================

EXHIBIT 3

```
--------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                    Progress Notes
--------------------------------------------------------------------------
03/05/2018 08:37     ** CONTINUED FROM PREVIOUS PAGE **
```

monitoring, expediting clinical consultations, bereavement support:

Veteran was offered evaluation and treatment in the podiatry service if needed.
The Veteran reports that he has had no negative outcomes other than three numb
toes that don't bother him.


Advisement of 1151 claims process and right to file administrative
tort claim:  Veteran was informed of his rights to file a 1151 disability
claim and/or administrative Tort Claim. Financial Compensation after an injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
Veteran was given Jana Bakle's contact information to follow up with any
additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


                    Signed by: /es/ JANA M BAKLE
                               RISK MANAGER
                               03/05/2018 08:38

WORK COPY ========= UNOFFICIAL - NOT FOR MEDICAL RECORD ============ DO NOT FILE
HEIFNER,MARTIN LUTHER                                    Printed:03/09/2018 08:53
                    VA NORTHERN INDIANA HEALTHCARE SYSTEM
                        Pt Loc: OUTPATIENT              Ph:(419)263-8023C
================================= CONFIDENTIAL INFORMATION ================================


                            Page 10 of 103

# Progress Notes

Printed On Mar 20, 2018

```
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: MAR 19, 2018@15:19    ENTRY DATE: MAR 19, 2018@15:19:29
      AUTHOR: BAKLE,JANA M         EXP COSIGNER:
      URGENCY:                          STATUS: COMPLETED
```

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: March 09, 2018

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
Conference room

Names and identity of those present:
 Robert Swisher- Veteran
 Dr. Becker-Podiatrist
 Dr. McBride- Chief of Staff
 Nicole Gust- HSS to COS
 Jana Bakle- Risk Manager

Discussion points of the adverse event:

8/10/15 Veteran was consulted to Dr. Hammersley of right drop foot with
difficult walking and severe pain. X-rays and MRI performed. 8/17/15 Dr.
Hammersley diagnosed Veteran with radiculopathy affecting lower thoracic and
lumbar spine. Ankle instability, pain; anterior talofibular ligament,
syndesmosis and Calcaneofibular ligament disruptions. peroneus brevis tendon
rupture.

MRI shows that Calcaneofibular and talofibular ligaments are intact. Thickening
of the anterior talofibular ligament suggesting sequela of remote injury. Split
tear of the peroneal brevis tendon at the retromalleolar groove. Distal
reconstitution at the peroneal tuberosity. Bones: no acute fracture or
dislocation.

11/9/15 Dr. Hammersley follows up with patient and documents that MRI shows
evidence of unhealed fracture of posterior malleolus and lateral malleolus,
rupture of peroneus brevis and disruption of anterior talofibular ligament and
syndesmostic ligaments. (MRI/X-ray only support the anterior talofibular
ligament injury).

1/8/16 Surgery was performed
1. Repair of tibialis posterior tendon with graft material.- Not indicated, no
evidence to support diagnosis.
2.  Repair of the anterior talofibular. -Indicated
3.  Repair of the syndesmosis. Using tightrope device. - Not indicated, no
evidence to support diagnosis. The tightrope device that was used was not
positioned correctly.
4.  Excision of old fracture fragment, posterior right fibula. - Not indicated.

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)**
SWISHER,ROBERT J
P.O.BOX 162
UNIONDALE, INDIANA  46791

**VISTA Electronic Medical Documentation**
Printed at MARION VA MEDICAL CENTER

# Progress Notes

* Krackow-type suturing technique is not correct procedure when repairing tendons.

Veteran followed up with Dr. Hammersley post-surgery with no post-operative occurrences. He did complain of decreased muscle strength and ankle instability.

3/9/17 Veteran returned to Podiatry for painful ankle and ankle rolling if he is not wearing boots. He was seen by another podiatrist and conservative therapy was initiated. Surgical options were discussed and decided to wait due to Veterans school schedule.

11/15/17 Veteran had surgery on right ankle due to thickened scar tissue to the anterior talofibular ligament region with adherence of the ATF ligament to the fibular periosteum and impinging within the lateral gutter.  After arthrotomy, there are no fibers of the ATF ligament seen.  Split tear of the peroneal brevis with FiberWire suture extending through the tendon sheath and into the adjacent soft tissues.

*       Inaccurate Diagnosis
*       Studies or images do Not confirm surgical diagnosis or findings.
*       Treatment or procedure not performed correctly.
*       Patient injury related to surgery causing patient to have a second surgery.
*       Use of inappropriate implants or hardware during surgery.

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran continues to have difficulty walking without boots. His ankle swells daily. He is currently followed by Podiatry service.

Advisement of 1151 claims process and right to file administrative tort claim:   The Veterans was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/19/2018 15:20

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| SWISHER,ROBERT J<br>P.O.BOX 162<br>UNIONDALE, INDIANA   46791 | Printed at MARION VA MEDICAL CENTER |

# Progress Notes

```
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: MAR 20, 2018@09:36    ENTRY DATE: MAR 20, 2018@09:36:16
     AUTHOR: BAKLE,JANA M         EXP COSIGNER:
     URGENCY:                          STATUS: COMPLETED
```

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: March 16, 2018

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
Conference room

Names and identity of those present:
 Derrick Link- Veteran
 Whitney- Veteran's wife.
 Dr. McBride- Chief of Staff
 Dr. Becker- Podiatrist
 Nicole Gust- HSS to COS

Discussion points of the adverse event:

Patient presented to Dr. Hammersley on 02/05/2014 for left foot pain. Previous
foot and ankle x-rays were performed. Dr. Hammersley noted tenderness of the
anterior process of the calcaneus and interpreted the x-rays to show an
elongated anterior process of calcaneus and early synostosis at navicular and
calcaneus bilateral feet. Dr. Hammersley diagnosed the patient with
Osteochondrosis at midtarsus bilateral and planned resection of coalition. The
patient was consented for Tarsal Coalition Resection and on 04/25/2014 the
patient was taken to the OR for Excision of hypertrophic bone with
interpositional autograft of the left foot.  This was a different diagnosis than
pre-operative assessment.  During the surgery, Dr. Hammersley dissected the
muscle belly of the extensor digitorum brevis and used it as an autograft. This
procedure was not performed correctly. The muscle was dissected losing it's
blood flow. It should have been used as a flap. The dissected muscle was then
packed into the space and not secured.

Seven days post-operation, Dr. Hammersley orders Veteran to begin weight
bearing. The sutures were removed on post-operative day 12 and ordered to return
to normal shoes gear. On the 3rd post-operative visit, the wound was noted to be
dehisced. Patient was given wound care instructions and prophylactic Cephalexin.
The dehiscence was likely caused from the weight bearing and return to normal
shoe gear too early.

On the 5th post-operative visit the patient complained of swelling and pain. Dr.
Hammersley diagnosed the patient with suspected rupture of joint adhesion. On
the next post-op visit Dr. Hammersley interpreted the x-rays to show possible
coalition at talocalcaneal articulation and ordered a CT scan of the left foot
and ankle. The patient did not follow-up with Dr. Hammersley.

---

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| LINK,DERRICK SHELTON<br>1816 RICHFIELD DR<br>NEW HAVEN, INDIANA  46774 | Printed at FORT WAYNE VA MEDICAL CENTER |

# Progress Notes

The gold standard for evaluating a suspected tarsal coalition is a CT Scan. Dr. Hammersley did not order a pre-operative CT Scan. He did not order the CT Scan until after the surgery when the. patient had continued pain. He did not order any advanced imaging or perform any diagnostic blocks. He did not try any conservative management with the patient.

*       Inaccurate diagnosis
*       Studies or imaging do not confirm surgical diagnosis or findings. There is no indication that the patient needed surgery based on the pre-operative x-rays.
*       Treatment or procedure not performed correctly.

*       Veteran had additional surgery (Left STJ Arthrodesis) by Non-VA Care podiatrist to correct foot instability.


Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran was seen by Non-VA podiatry and had the correct surgery performed. He states that the hardware sometimes gives him problems. He is followed by VA podiatry services currently.


Advisement of 1151 claims process and right to file administrative tort claim:  The Veterans was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any additional questions he may have.


/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/20/2018 09:36

---

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| LINK,DERRICK SHELTON<br>1816 RICHFIELD DR<br>NEW HAVEN, INDIANA   46774 | Printed at FORT WAYNE VA MEDICAL CENTER |

```
--------------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                        Progress Notes
--------------------------------------------------------------------------------
NOTE DATED: 03/05/2018 08:36
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
VISIT: 03/05/2018 08:36 FTW A NOTE-X
```

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: February 9,2018 @ 3:30pm

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
Conference room

Names and identity of those present:
John Gross ? Veteran
Sylvia Gross-Wife
Dr. McBride- Chief of Staff
Dr. Becker- Podiatrist
Nicole Gust- HSS to COS
Jana Bakle- Risk Manager

Discussion points of the adverse event:

Mr. Gross presented to ER 10/22/14 with right ankle pain and was diagnosed with
a distal fibular fracture. Patient returned to ER on 10/27/14 for increased pain
and swelling. A Venous U/S was performed and negative for DVT. Patient seen by
Dr. Hammersley on 11-5-14, walking with fenestrating fait due to Parkinson's and
diagnosed with a Right Ruptured Achilles tendon and apply an Epifix graft. The
Veteran was taken to the operating room 11-19-14 to repair the Ruptured Achilles
tendon and apply and EpiFix Graft. The tendon was noted to be diseased and
degenerative and the Plantaris muscle was used to reinforce the Achilles tendon
and the graft was then affixed. The fibular fracture was not addressed. The
patient's wound dehisced by the 12/18/14 follow up appointment with Dr.
Hammersley which progressed and worsened until the patient was eventually
admitted on 12/31/14 for MSSA infection requiring IV antibiotics and dressing
changes. An MRI was performed on 1/2/15 that showed multiple fibers of the
Achilles still intact, marked thickening and increased extensive increased
signal centrally, but with evidence small amount of gas extending from the
overlying ulcer as well as a medial and lateral talar dome lesion, no fibular
fractures were seen. The patient was discharged home on oral antibiotics on
1/5/15. On this day, 2 Epifix grafts were applied over the dehisced ulcers. On
1/15/15, the patient was still taking Doxycycline and 2 more Epifix grafts were
applied to the dehisced wound. Again, on 1/22/15 and 2/19/15, Epifix grafts were
applied to the dehisced wound. On 3/17/15, the patient was instructed that he
was OK to walk and begin activities. On 4/2/15, he was seen in the ER again for
pain, swelling, and redness to his right ankle. He was seen by another
podiatrist that ordered him antibiotics and debrided loose skin from the
Achilles incision.

```
*      Lack of diagnostic testing to support Achilles Tendon Rupture.
*      Dr. Hammersley did not do any further imaging studies to follow-up on
the fibular fracture that was diagnosed in the ER.
*      Surgical procedure was not appropriate based on clinical presentation,
diagnostic images, and/or ancillary studies.
o      Dr. Hammersley made note in the operative report that the Achilles
                    ** THIS NOTE CONTINUED ON NEXT PAGE **
WORK COPY ========= UNOFFICIAL - NOT FOR MEDICAL RECORD ========= DO NOT FILE
GROSS,JOHN DOUGLAS                                      Printed:03/09/2018 08:02
              VA NORTHERN INDIANA HEALTHCARE SYSTEM
                  Pt Loc: OUTPATIENT            Ph:(260)485-2902
=========================== CONFIDENTIAL INFORMATION ===========================
```

                                                      **EXHIBIT 6**

```
-------------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                    Progress Notes
-------------------------------------------------------------------------------
```

03/05/2018 08:36      ** CONTINUED FROM PREVIOUS PAGE **

tendon was diseased and degenerated, but did not mention anything about a
rupture of the tendon or any hematoma formation that occurs in the ruptured
fibers of the Achilles tendon. There was no need to reinforce the Achilles with
the Plantaris tendon.
*       Dr. Hammersley removed the sutures too early and the wound dehisced. The
wound became infected and Dr. Hammersley did not prescribe any oral antibiotics.
These were not prescribed until the Veteran went to the ER on 12/29/14 by the ER
provider.
*       Once the patient was admitted for the MSSA infection of the Dehisced
Achilles tendon and the MRI was performed and showed possible gas within the
tissues, Dr. Hammersley did not take the patient back to the OR for Irrigation
and Drainage of the dehisced and infected wound.
*       Dr. Hammersley applied two Epifix grafts to the dehisced ulcers on the
day of the patient's discharge home from the admission of the wound infections.
Biologic Allografts are contraindicated in the presence of infection. However,
Dr. Hammersley continued to apply the grafts while the patient was continuing
oral antibiotics.
*       The patient continued to be in pain for his right ankle and was seen in
the ER on multiple occasions.
*       The mechanism of action for the Veteran's ankle pain at the acute onset
could not be both for a fibular fracture and an Achilles tendon rupture. This
was a pain that started gradually over two weeks and worsened. The Veteran could
not recall any injury. The pain was never fully evaluated prior to the patient
being taken to the OR. Given the operative report findings, it is more likely
than not that the patient had either an Achilles tendinosis or simply Ankle
arthralgia given the 2 talar domes lesions that were discovered on the MIR.

Offer of assistance, including arrangements for a second opinion, additional
monitoring, expediting clinical consultations, bereavement support:

Veteran was offered evaluation and treatment of his continued slight limp by the
podiatry service.

Advisement of 1151 claims process and right to file administrative
tort claim:  Veteran was informed of his rights to file a 1151 disability
claim and/or administrative Tort Claim. Financial Compensation after an injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
Veteran was given Jana Bakle's contact information to follow up with any
additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


                    Signed by: /es/ JANA M BAKLE
                               RISK MANAGER
                               03/05/2018 08:36


WORK COPY ========== UNOFFICIAL - NOT FOR MEDICAL RECORD ========== DO NOT FILE
GROSS,JOHN DOUGLAS                                      Printed:03/09/2018 08:02
                    VA NORTHERN INDIANA HEALTHCARE SYSTEM
                        Pt Loc: OUTPATIENT                Ph:(260)485-2902
========================= CONFIDENTIAL INFORMATION =========================
                              Page 16 of 103
```

# VA Notes

| | |
|---|---|
| **Source:** | VA |
| **Last Updated:** | 27 Mar 2018 @ 2207 |
| **Sorted By:** | Date/Time (Descending) |

VA Notes from January 1, 2013 forward are available 3 calendar days after they have been completed and signed by all required members of your VA health care team. If you have any questions about your information please visit the FAQs or contact your VA health care team.

| | |
|---|---|
| **Date/Time:** | 20 Mar 2018 @ 1831 |
| **Note Title:** | INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT |
| **Location:** | VA NORTHERN INDIANA HCS |
| **Signed By:** | BAKLE,JANA M |
| **Co-signed By:** | BAKLE,JANA M |
| **Date/Time Signed:** | 20 Mar 2018 @ 1832 |

**Note**

LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: MAR 20, 2018@18:31    ENTRY DATE: MAR 20, 2018@18:31:49
  AUTHOR: BAKLE,JANA M    EXP COSIGNER:
  URGENCY:        STATUS: COMPLETED

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: 3-8-18

Place of Discussion (Reason for any delay in the disclosure):   Marion
Conference Room
Names and identity of those present:
Deborah Fortier-Veteran
Tracy- Veterans Friend
Dr. McBride- Chief of Staff
Dr. Becker- Podiatrist
Nicole Gust- HSS to COS
Jana Bakle-Risk Manager


Discussion points of the adverse event:

Veteran was consulted to Dr. Hammersley on 9/2/15 for chronic pain in both feet.

She had a history of ORIF surgery on left foot from a previous injury. Dr.
Hammersley states the left foot x-ray shows show degenerative changes at
tarsometatarsal articulation. He diagnosed her with traumatic arthritis left

                         **EXHIBIT 7**

foot and lisfranc fracture/dislocations bilateral. He ordered a CT scan and continued Ritchie braces.

CT performed on 9/15/15 that did not support the Lisfranc or Tarsometatarsal fracture/dislocation.

Veteran has surgery on 11/13/15 for Arthrodesis of the 1st, 2nd, and 3rd metatarsal
joint, left foot using screw fixation. The procedure was done improper. The screws were all in the same direction not allowing for good stability. Also, the

screws used were too long.

Dr. Hammersley ordered the Veteran on 12/31/15 to begin weightbearing. Seven weeks post-operative is too early for Veteran to bear weight. This should have been 10-12 weeks. The x-rays dated 12/31/15 do not show fusion of the bones, further indicating that she should not be weight bearing.

2/1/16 Dr. Hammersley documents that the Veteran has done some walking in her bot against medical advice which is inaccurate since he documented the previously instructing the patient to begin weight bearing. That visits x-ray shows one of the screws is projecting into the joint space. He had planned surgery to remove screw. However, the Veteran developed pink eye and the surgery

was canceled.

4/20/16 The Veteran was seen by another podiatrist due to Dr. Hammersley on medical leave. The Veteran stated that she has been in a boot since surgery. CT was ordered and completed on 5/18/16 that showed incomplete fusion of the third tarsometatarsal joint with the third tarsometatarsal screw terminating between the second and third cuneiforms. A longitudinally oriented second tarsometatarsal screw terminates at the navicular cuneiform joint space.

Veteran was notified of the results of the CT scan and did not follow up with VA

podiatry service. She instead followed-up with Non-VA provider who removed the screws.


*      Studies or imaging do Not confirm surgical diagnosis or findings.
*      Treatment or procedure not performed correctly. The hardware used were too long and not fixated correctly.
*      Lack of appropriate or incomplete medical record documentation.
*      Inappropriate or incomplete post-operative follow up. Veteran was ordered to walk too early which caused delay in fusion and screw displacement.

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran states she has not walked on her foot since her surgery in November 2015.  She said she is in a wheel chair for life. She was offered a thorough evaluation from podiatry. She is scheduled on 4-10-18.

Advisement of 1151 claims process and right to file administrative
tort claim:   The Veterans was informed of his rights to file a 1151 disability
claim and/or administrative Tort Claim. Financial Compensation after an injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any

additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/20/2018 18:32

| | |
|---|---|
| **Date/Time:** | 20 Mar 2018 @ 1139 |
| **Note Title:** | HT NOTE |
| **Location:** | VA NORTHERN INDIANA HCS |
| **Signed By:** | BEITLER,WENDY M |
| **Co-signed By:** | BEITLER,WENDY M |
| **Date/Time Signed:** | 20 Mar 2018 @ 1149 |

**Note**

LOCAL TITLE: HT NOTE
STANDARD TITLE: CARE COORDINATION HOME TELEHEALTH NOTE
DATE OF NOTE: MAR 20, 2018@11:39   ENTRY DATE: MAR 20, 2018@11:40:28
   AUTHOR: BEITLER,WENDY M    EXP COSIGNER:
   URGENCY:                STATUS: COMPLETED

Type of Encounter: Telephone
Care coordinator called veteran/caregiver
Diagnosis: Obesity
Length of conversation: 5-10 minutes

FORTIER, DEBORAH (-6231)
Vital Sign Data for: 02/19/2018 - 03/20/2018
(All times are EST; All weights are lbs)

Primary DMP: VHA-Wt Mgmt
Comorbid(s):

====================

# Progress Notes

Printed On Mar 15, 2018

LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: MAR 14, 2018@13:18     ENTRY DATE: MAR 14, 2018@13:18:42
       AUTHOR: BAKLE,JANA M       EXP COSIGNER:
       URGENCY:                   STATUS: COMPLETED

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: March 09, 2018

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
Conference room

Names and identity of those present:
 Michael Garman- Veteran
 Michelle- Wife
 Dr. McBride- Chief of Staff
 Dr. Becker- Podiatrist
 Nicole Gust- HSS to COS
 Jana Bakle- Risk Manager

Discussion points of the adverse event:

Veteran chief complaint was painful Left foot for 2 years. X-ray showed non-
union left foot base of 5th metatarsal fracture. Surgeries was performed by Dr.
Hammersley on 10/14/2011, 2/24/2012, 4/13/2012 and 6/12/2015.

10/14/2011-Open reduction, internal fixation, left fifth metatarsal base
fracture Surgery is appropriate. Patient present with non-union 5th metatarsal
base fracture, conservative treatments attempt, but without benefits. There are
acceptable indications for surgery.

2/24/2012-Surgery to remove K-wire due to irritation. Surgery was within
standard of care.

4/13/2012-Removal of hardware, removal of screw and transfer of peroneus brevis
tendon to the cuboid with anchor fixation, Left foot. The surgery was
inappropriate. There were no indications for peroneal brevis tendon transfer.
Dr. Hammersley also did not state in pre-op notes the reason for peroneal brevis
tendon transfer and there were no diagnostic studies to support surgery. The
surgery report is indicating that the peroneal brevis transfer was to the
cuboid. This is not a standard transfer location and not indicated. Two anchors
were used for tendon transfer. The intra-operative x-rays indicates that one of
the anchors was placed in the calcaneal cuboid joint space.

4/17/2012- four days post-surgery, Veteran felt rubber band pulling feeling with
snapping sensation burning/sharp pain. He was seen by Dr. Hammersley on
4/20/2012 and ordered Veteran to remain non-weight bearing for 5 more weeks and
to do range of motion exercises and follow-up in two weeks.

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
GARMAN,MICHAEL A
4730 PLEASANT VALLEY DRIVE
FORT WAYNE, INDIANA  46825

VISTA Electronic Medical Documentation
Printed at MARION VA MEDICAL CENTER

# Progress Notes

5/18/2012- Veteran complained of more pain with frequent "electricity bolts" like pain through his left foot. With no podiatry follow-up and Veteran missed his 6/1/2012 appointment due to a family emergency.

6/29/2012- Dr. Hammersley saw the Veteran and documented that the Veteran had less pain and electric sensations to anterior left ankle intermittently. Dr. Hammersley ordered Veteran home exercises.

7/20/2012- Veteran had continued pain and Dr. Hammersley gave Veteran a peripheral nerve block without documented consent.

08/31/2012- Veteran had continued pain and Dr. Hammersley gave Veteran a peripheral nerve block without documented consent.

10/9/2012- X-rays were performed that show osteopenia and the anchor is in the calcaneal cuboid joint that was not addressed.

The Veteran states he complained of pain and electric bolt sensations to various providers and nobody would believe him.

12/6/2013 Veteran saw Dr. Hammersley for painful 5th metatarsal left foot. X-rays were completed that noted old fracture deformity is seen involving the fifth metatarsal base. He was ordered to wear pneumatic boot for 6 weeks.

05/03/2014 Veteran was seen by Dr. Hammersley. He noted tenderness to palpation at 4th intermetarsal space with paresthesia to 4th and 5th digits and was diagnosed with neuroma of the 4th inter-metatarsal space. There was no diagnostic testing to support this diagnosis.

02/09/2015 Veteran was seen and complained of continued pain. Dr. Hammersley recognizes the anchor in the joint space and planned surgery to remove it. 6/12/2015 Veteran has a fourth surgery to remove the bone anchor that holds the peroneal brevis that was positioned originally in the joint space.

7/20/15 Veteran was seen in the emergency room because he felt a "snap" on the lateral aspect of his foot. Ambulation and movement increases the pain. This was likely a rupture of the peroneal brevis. 8/5/2015 he was seen by another podiatrist (Dr. Shiu) who did not do any further diagnostic testing.  Veteran has not been followed by podiatry since.  He continues to have pain and cannot run at all. He can only walk for a short distance.

*      Inaccurate Diagnosis
*      Studies or imaging do not confirm surgical diagnosis
*      Treatment or procedure not performed correctly.
*      Use of inappropriate implants(s) or hardware during surgery.
*      Patient injury related to surgery
*      Unnecessary procedure

Offer of assistance, including arrangements for a second opinion, additional

---

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| GARMAN,MICHAEL A<br>4730 PLEASANT VALLEY DRIVE<br>FORT WAYNE, INDIANA  46825 | Printed at MARION VA MEDICAL CENTER |

# Progress Notes

monitoring, expediting clinical consultations, bereavement support:

Mr. Garman currently cannot run at all. He can only walk for a short distance
due to his pain and loss of function. He was offered a thorough evaluation with
podiatry and is scheduled on 4-16-18.

Advisement of 1151 claims process and right to file administrative
tort claim:   The Veterans was informed of his rights to file a 1151 disability
claim and/or administrative Tort Claim. Financial Compensation after an injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any
additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522

/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/14/2018 13:12

/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/14/2018 13:20

---

  LOCAL TITLE: PODIATRY NOTE
STANDARD TITLE: PODIATRY NOTE
DATE OF NOTE: JUN 30, 2015@07:32    ENTRY DATE: JUN 30, 2015@07:32:20
     AUTHOR: HAMMERSLEY,BRADLEY   EXP COSIGNER:
     URGENCY:                        STATUS: COMPLETED

s-pt rtc 18 days sp removal of hardware left foot. pt states he has some
residual tenderness but pain is much less than before the surgery. pt states
he is finishing his oral antibiotic.
o-nvsi, sutures intact lateral left foot. no signs of infection. no
ecchymosis
and decreasing edema appropriate for level of intervention.
a-sp hardware removal left c-c joint. healing well
p-performed e&m, removed sutures. follow up prn.
 P-MEDICATION RECONCILIATION REVIEW:
   Outpatient Medication Review
     Current Medications
     Active Outpatient Medications (including Supplies):


       Active Outpatient Medications                    Status
       ==========================================================================

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
GARMAN,MICHAEL A
4730 PLEASANT VALLEY DRIVE
FORT WAYNE, INDIANA  46825

VISTA Electronic Medical Documentation
Printed at MARION VA MEDICAL CENTER

3.  Diffuse muscle atrophy.

Recommendations:
There are no changes recommended in your current treatment.
  Comment: Keep podiatry appointment for discussion of plan of care.

If you have any questions regarding these results, please contact
Telephone Triage at 1-855-492-6985 or your local office.

Fort Wayne at 260-426-5431
Marion at 765-674-3321
Goshen CBOC at 574-534-6108
Muncie CBOC at 765-284-6822
Peru CBOC at 765-472-8907
St. Joseph County Clinic at 574-272-9000

Sincerely,

/es/ Holly K Becker, DPM
     DPM

Patient Record Number 139032

```
-----------------------------------------------------------------------
=======================================================================
Date/Time:              25 Apr 2018 @ 1359
Note Title:             INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
Location:               VA NORTHERN INDIANA HCS
Signed By:              BAKLE,JANA M
Co-signed By:           BAKLE,JANA M
Date/Time Signed:       25 Apr 2018 @ 1400
-----------------------------------------------------------------------

  LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: APR 25, 2018@13:59      ENTRY DATE: APR 25, 2018@13:59:19
     AUTHOR: BAKLE,JANA M         EXP COSIGNER:
     URGENCY:                                 STATUS: COMPLETED
```

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: March 13, 2018

Place of Discussion (Reason for any delay in the disclosure): Fort Wayne
Conference Room

Names and identity of those present:

Jerry Kittle- Veteran
Darlene Kittle- Veteran's husband
Dr. McBride- Chief of Staff
Nicole Gust- HSS to COS
Dr. Becker- Podiatrist
Jana Bakle-Risk Manager

Discussion points of the adverse event:

10/3/12 Veteran presented to his primary care RN for right ankle swelling due to

an injury he occurred two months prior. X-rays were taken that showed a 5th
tarsal fracture. Veteran was referred to podiatry.

10/5/12 Veteran consulted with Dr. Hammersley. Dr. Hammersley diagnosed the
Veteran with a Jone's fracture, dispensed aircast, and planned for surgical
intervention. Weightbearing instructions was not documented. Veteran should have

been non-weightbearing. (The 10/26/12 Surgery report states that the Veteran was

ambulating.)

10/26/12 Surgery #1.  Veteran was consented for open reduction internal fixation

of metatarsal fracture. Dr. Hammersley described the fracture as a Nonunion. Dr.

Hammersley dictated that the bony bridge had been resected because it had been reformed. This was not indicated because the bone was already healing. The 2.7mm

X 22mm screw used were not long enough to purchase the fracture fragment. And the most distal screw used was too long. The plate used was not original and has

been cut prior to insertion. The plate is cut through the 5th hole with no documentation to explain why. Veteran was not placed in a cast or splint.

11/2/12 Veteran has been putting pressure on foot and complained of pain in medial ankle. No x-rays were taken to determine if alignment has changed. He continued to have

11/16/12 Veteran continues to have pain and sutures removed. He was instructed to stay off right foot.

12/7/12 Veteran reports pain is improving since immobilization. Dr. Hammersley reports a medial malleolar fracture on 12/7/12 x-ray that is not supported by radiologist report. The x-ray shows that a screw is backing out and there is no significant healing at the fracture site. Veteran was instructed to continue air

cast and remain non-weightbearing.

1/4/13 Veteran had foot x-rays that shows the screw is continuing to back out and shows no significant interval callus formation. Dr. Hammersley documents that the fracture is healing well and medial malleolar fracture is healing. However, the foot x-rays don't support that finding and there are no ankle x-rays. The Veteran was instructed to return to normal shoe gear. However, the bones haven't healed and the Veteran should have continued non-weightbearing.

2/25/13 Veteran calls telephone triage and complains of pain when walking in the

right foot on the left side behind the great toe. Veteran was scheduled a follow

up appointment with Dr. Hammersley.

3/1/13 Veteran had foot x-rays and was seen by Dr. Hammersley. Dr. Hammersley documents a shadow on the x-ray at the medial shoulder of talus suspicious of ostechondritis and that the 5th metatarsal is healing. However, the medial shoulder of the talas cannot be seen on the foot x-rays. Also, the x-rays do not

show that the fracture is healing and the screw continues to back out. Dr. Hammersley ordered a CT scan.

3/11/13 CT scan shows that Veteran has mild arthritis at the tibiotalar joint and talofibular joint and no evidence of osteochondrial lesion. There is no loss

of cartilage. However, Dr. Hammersley interrupts the CT scan to show extensive degeneration and cyst formation of talar dome
right foot and plans to perform surgery at a Non-VA hospital.

4/17/13 Surgery #2. Veteran has surgery at St. Joseph Hospital with Dr. Hammersley for resection of osteochondral lesion with bone grafting via medial malleolar osteotomy and remove of hardware, fifth metatarsal, right foot. The surgery reports that medial malleolus was removed to identify the talar dome lesion. A graft is placed on the lesion and the medial malleolus is placed back in position with screws. There is no rational documented to indicate removal of hardware was necessary. Pt was not placed in a splint or cast to promote non-weightbearing instructions or ordered crutches/wheelchair to assist with ambulation.

5/3/13 Three weeks post-surgery Veteran states he had been weightbearing despite

non-weightbearing instructions. Dr. Hammersley documents there is crepitus on range of motion of right ankle and patient able to actively move ankle without pain. Dr. Hammersley instructed the Veteran to begin weightbearing on right foot. The reviewer states it is too early to move ankle and should not have been

done. As well as, it is too early to begin weightbearing activities.

5/31/13 Dr. Hammersley documents that the Veteran he has been weightbearing despite his advice to stay off his foot. However, it is documented that to start

weightbearing at the last visit. X-rays were taken that show displacement of medial malleolar osteotomy and motion around screws. The screws are not inserted

into the cortex and does not match up to the tibia. Reviewer stated this is a result of weightbearing instructions that was given by Dr. Hammersley.

7/5/13 X-rays were taken that shows a bigger gap than the previous x-ray. Dr. Hammersley plans surgery for Removal of hardware, open reduction and internal fixation of osteotomy right medial malleolus.

8/9/13 Surgery #4. Surgery was performed. Dr. Hammersley removed the screws, manually reduced the osteotomy site inserted two 4.0 fully threaded cancellous screws. The reviewer stated that a plate would have been appropriate. The Veteran was placed in a posterior plaster splint. Post-surgical x-ray shows a medial malleolar step-off and the 5th metatarsal is still not healed.

8/21/13 Veteran presented with a dirty splint and stated he is weightbearing to transfer. Dr. Hammersley discontinues the splint, orders aircast pneumatic boot and orders Veteran to stay off his foot at all times. X-rays show that it is not

healing with the same size gap.

9/6/13 Dr. Hammersley documents that Veteran is healing well and no gross displacement of the osteotomy. However, there is no x-rays at this visit. Dr. Hammersley instructed Veteran to stay off his right foot for 2 weeks and then resume weightbearing.
Weightbearing x-rays have not been ordered.  The Veteran has displacement of the

fracture. Loss of fixation, delayed healing. And, the 5th metatarsal fracture isn't healed. He will only be 6 weeks post-op and should not begin weightbearing.

10/4/13 Dr. Hammersley documents that x-rays show failure of hardware with some displacement of osteotomy with evidence of some periosteal reaction. The reviewer states this was because he was instructed to be weightbearing too soon.

X-rays show a broken screw.  Dr. Hammersley instructed the Veteran to go back to

Non-weightbearing.

10/18/13 Veteran complains of tenderness and bending of ankle medially. Dr. Hammersley plans surgery to reduce right ankle by using a plate.

11/22/13 Surgery #5. Veteran has surgery to remove hardware and open reduction internal fixation of the medial malleolar osteotomy. The surgery dictation and intra-operative x-rays suggest that the surgery procedures were not performed correctly.  The 7-hole plate was not contoured well around the medial malleolus.

There was no interfrag screw placed. The 4-0 x 60 mm scre
w should have been
placed fist sine it was used to close the osteotomy site. Also, there was multiple "ghost" drill holes seen with no screw in the proximal hole. Veteran was placed in a short leg cast.

12/6/13 2 weeks post-surgery follow up Dr. Hammersley continued non-weightbearing instructions.

1/3/14 x-rays show no interval healing. Medial talus is lucent and with significant degenerative changes. Radiologist reports the alignment is anatomic.

However, the images do not support that.
Cast was reapplied and Veteran was instructed to continue non-weightbearing.

2/5/14 x-rays identified a screw has broken. Veteran has placed in a pneumatic boot and instructed to continue non-weightbearing.

3/5/14 Dr. Hammersley review the x-rays to show some medial displacement of ankle joint with some interval healing. However, the x-rays do not support interval healing. Veteran was ordered a bone stimulator and instructed to continue non-weightbearing.

4/9/14 Dr. Hammersley referred Veteran to a Non-VA Care podiatrist for further care.

5/1/14 Non-VA Podiatry notes in Vista Imaging identify medial displacement of the meeial malleolar fracture fragment with a gap being approximately 4-5mm. No evidence of healing across the fracture margin. He was diagnosed with a Non-Union medial malleolar osteotomy site of the right ankle with a varus titling of

the talus in the ankle mortise with non-union of the osteotomy. The Non-VA provider stated that no further reconstructive options are available "due to the

fact that the medial malleolus has had three operations on it and has had so many screw holes in it already". Ankle Arthrodesis was recommended with removal of the broken plate and as broken screws that can removed. Veteran had surgery on 1/7/15.

```
*        Treatment or procedures not performed correctly
*        Studies or imaging do Not confirm surgical diagnosis or findings.
*        Lack of use of appropriate hardware and use of inappropriate hardware
during surgery.
*        Inappropriate or incomplete post-operative follow-up.
*        Patient injury related to surgery and post-operative instructions.
*        Lack of appropriate or incomplete medical record documentation.
```

Offer of assistance, including arrangements for a second opinion, additional
monitoring, expediting clinical consultations, bereavement support:

Veteran continues to have pain daily and ankle instability. He was offered a
thorough evaluation from the podiatry service.

Advisement of 1151 claims process and right to file administrative
tort claim:   The Veterans was informed of his rights to file a 1151 disability
claim and/or administrative Tort Claim. Financial Compensation after an injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any
additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


/es/ JANA M BAKLE
RISK MANAGER
Signed: 04/25/2018 14:00
--------------------------------------------------------------------------

```
Date/Time:              25 Apr 2018 @ 0850
Note Title:             MRI PROCEDURE FORM
Location:               VA NORTHERN INDIANA HCS
Signed By:              MEITZLER,DAVID R
Co-signed By:           MEITZLER,DAVID R
Date/Time Signed:       25 Apr 2018 @ 0851
--------------------------------------------------------------------------

 LOCAL TITLE: MRI PROCEDURE FORM
STANDARD TITLE: SCANNED NOTE
DATE OF NOTE: APR 25, 2018@08:50     ENTRY DATE: APR 25, 2018@08:50:58
     AUTHOR: MEITZLER,DAVID R     EXP COSIGNER:
     URGENCY:                        STATUS: COMPLETED
```

MRI completed.

/es/ DAVID R MEITZLER
Radiology Technologist
Signed: 04/25/2018 08:51
--------------------------------------------------------------------------

```
Date/Time:              22 Feb 2018 @ 1511
Note Title:             Patient Aligned Care Team Practitioner Note
Location:               VA NORTHERN INDIANA HCS
Signed By:              ATLURI,VIJAYA L
Co-signed By:           ATLURI,VIJAYA L
Date/Time Signed:       22 Feb 2018 @ 1541
--------------------------------------------------------------------------

 LOCAL TITLE: Patient Aligned Care Team Practitioner Note
STANDARD TITLE: PRIMARY CARE ATTENDING NOTE
DATE OF NOTE: FEB 22, 2018@15:11     ENTRY DATE: FEB 22, 2018@15:11:05
     AUTHOR: ATLURI,VIJAYA L     EXP COSIGNER:
     URGENCY:                        STATUS: COMPLETED
```

CHIEF COMPLAINT AND HISTORY OF PRESENT ILLNESS:
veteran is here for reassessment of chronic medical conditions.
No new symptoms.
1. infected cyst R neck being treated by NON VA ENT, improving. MRI neck was
·recently done, possibly will need excission of cyst.
2. Being treaten for bilateral leg edema and stasis ulcer left leg by vein
clinic and wound clinic.

5/7/2018 10:38 AI

# Progress Notes

Printed On Apr 19, 2018

```
   LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: MAR 20, 2018@17:15     ENTRY DATE: MAR 20, 2018@17:15:41
      AUTHOR: BAKLE,JANA M      EXP COSIGNER:
      URGENCY:                        STATUS: COMPLETED
```

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: 3-16-18

Place of Discussion (Reason for any delay in the disclosure):   Fort Wayne
Conference Room
Names and identity of those present:

Carisa Snyder- Vetearn
Dr. McBride- Chief of Staff
Nicole Gust- HSS to COS
Jana Bakle-Risk Manager


Discussion points of the adverse event:

Patient presented to Dr. Hammersley on 08/23/2014 for right foot pain. Patient
had previous right foot x-rays performed on 06/13/2014 that showed no sign of
fracture and mild degenerative changes involving the first metatarsophalangeal
joint space. On 08/23/2014 Dr. Hammersley interpreted the same x-rays as
evidence of fracture of tibial sesamoid of right foot. He placed the patient
into a pneumatic boot and instructed her to follow-up in 1 month.

On 10/03/2014 Dr. Hammersley created and signed 2 chart notes for the patient.
They are identical chart notes with the exception that one says the patients
right foot is "healing" and the other says it is "not healing". In the
"healing" note, he relates that the patient should continue the pneumatic boot
and return to clinic in 1 month for follow-up. In the "non-healing" note he
begins medical clearance, discontinues the boot, told the patient to continue
first ray cutout pads, and instructs the patient to return to clinic in 2
months.

On 12/05/2014 the patient was consented for Ostectomy of the Right foot. On
01/16/2015 the patient had surgery for removal of tibial sesamoid right foot
with repair of short flexor tendon right foot. The patient had 2 post-operative
follow-up appointments with Dr. Hammersley.

Dr. Hammersley did not perform any advanced imaging (MRI, bone scan, CT scan) to
confirm a fracture of the tibial sesamoid. On comparison of the x-rays from
06/13/2014 and 10/03/2014, there is no change in the tibial sesamoid. There is
no indication that surgery was warranted.

During the surgery, Dr. Hammersley documented that he accidently cut the medial
tendon arm of the flexor hallucis brevis. He repaired the interrupted and

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)**
SNYDER,CARISA AMY
620 W OAKDALE DR
FORT WAYNE, INDIANA  46807

VISTA Electronic Medical Documentation
Printed at MARION VA MEDICAL CENTER

# Progress Notes

damaged tendon. Veteran states that she was not aware of the intraoperative occurrence.

*     Inaccurate diagnosis.
*     Lack of or inappropriate diagnostic testing.
*     Studies or imaging do Not confirm surgical diagnosis or findings.
*     Patient injury related to surgery.
*     Lack of appropriate or incomplete medical record documentation.
*     Procedure not indicated.

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran has pain mainly on the top of the foot, but on the bottom after doing a lot of walking.
She is currently followed by the podiatry service and has had an additional surgery related to her pain.

Advisement of 1151 claims process and right to file administrative tort claim:  The Veterans was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522

/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/20/2018 17:16

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, If available)**
SNYDER,CARISA AMY
620 W OAKDALE DR
FORT WAYNE, INDIANA  46807

**VISTA Electronic Medical Documentation**
Printed at MARION VA MEDICAL CENTER

# Progress Notes

```
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: APR 11, 2018@12:44    ENTRY DATE: APR 11, 2018@12:44:12
     AUTHOR: BAKLE,JANA M       EXP COSIGNER:
     URGENCY:                        STATUS: COMPLETED
```

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: 3-5-18

Place of Discussion (Reason for any delay in the disclosure):   Fort Wayne
Conference Room
Names and identity of those present:

Deborah Smith-Veteran
Dr. McBride- Chief of Staff
Dr. Becker- Podiatrist
Nicole Gust- HSS to COS
Jana Bakle-Risk Manager


Discussion points of the adverse event:


Patient present with complaints of left foot pain seen by Dr. Hammersley on July
21st, 2009. Diagnosis was painful navicular accessary extremum. Surgery was
performed on 8/4/2009. There was no documented conservative care. Patient most
likely have posterior tibia tendonitis which can be treated with conservatively
care. Surgery can avoid if conservatively care is beneficial. If conservative
care failed, then surgery can consider.

Veteran had a CT ordered for her right foot without any evaluation or indication
documented. Both right and left CT scan did not show any pathology with tendons.
He did not order further diagnostic testing to confirm pathology with the
tendon. Surgery was scheduled for bilateral tibialis posterior tendon repair
with graft jacket graft.


On 1/22/2010, surgery was performed again on her left foot, as well as the right
foot. Dr. Hammersley diagnosed patient with ruptured tibialis posterior tendon
bilateral. There are no clinical histories and imaging studies which indicated
rupture of the tibial tendons bilateral.
Patient cannot have MRI due to recent bone anchor implant of let foot. However,
musculoskeletal ultrasound should've been ordered to rule in rupture of
posterior tibial tendon. Again, there were no conservative treatments. Dr.
Hammersley indicated in the operative report the frayed tendon was resected, but
no rupture. Pathology reported showed "inflammation" of the posterior tibial
tendons. Resection of the inflamed tendon will only be indicated after failed
conservative care. Patient cont'd to have pain thru 2013.

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, If available)
SMITH,DEBORAH KAY
3771 S SR 9
COLUMBIA CITY, INDIANA  46725

VISTA Electronic Medical Documentation
Printed at MARION VA MEDICAL CENTER

# Progress Notes

Veteran continues to have pain in her left foot, limiting ambulation. Dr. Hammersley ordered x-rays and diagnosed her with fracture of the navicular tuberosity.  X-rays do not support the diagnosis. Veteran is placed in a cam walker for about six weeks. No further evaluations in podiatry until February 2013 due to continued pain in the left foot at the mid tarsal joint. X-rays were ordered were negative, orthotics were ordered and she was to follow up as needed.

In October 2013, Veteran was seen due to right ankle pain from injuring her ankle on a boat ramp. X-rays were negative. MRI was ordered on 10-18-2013 which showed non-displaced fracture of posterior malleolus and intact peroneal longus and brevis tendon. Non-displaced fracture should be treated conservatively, ORIF with 2 screw fixations is not necessary and does not meet standard of care. Pre-op x-ray on 12-6-2013 showed no displaced fracture of the posterior malleolus. No indications for peroneal longus repair, which is not rupture. Operative report stated, " ... the tendon sheath was incised and the peroneus brevis tendon was noted to have a frayed and flattened appearance just proximal to the right ankle joint. Also, there was noted to be a significantly excess length to it, which was then resected.". The operative report has significant discrepancy from the MRI report and the description of peroneal brevis tendon with significantly excess length is completely illogical.

Patient has surgery on 1-15-2014 - 1. Open reduction and internal fixation of posterior malleolar fracture, right ankle. 2. Repair of peroneus brevis tendon with graft, right ankle. There were no indications for surgery. The procedure technique that was completed on the peroneal brevis tendon was not performed accurately. As well as the x-rays reveal that the screws used were too long and placed into the ankle joint. Post-surgery, the Veteran was not able to wiggle her toes which was a result of the improper surgery technique. Post-operatively the Veteran continued to have diminished sensation of the 4th and 5th toes, lateral aspect of right foot, and unable to dorsi flex and evert the right foot. On 4-9-2014, Dr. Hammersley diagnosed her with failed repair of peroneus brevis and peroneus longus right foot. Veteran had a CT scan on 4-12-14 that showed generalized demineralization throughout the ankle and hindfoot compatible with disuse atrophy.

5-5-2014 Dr. Hammersley performed a fourth surgery at a Non-VA hospital for right ankle repair of peroneal longus tendon and repair of remainder of peroneus brevis tendon with bone anchor to the fifth metatarsal base, also with transfer of the peroneus brevis through peroneus longus tendon.  The surgery was a result of the prior surgery that was not indicated.

7-18-14, Nine weeks post-operatively, Veteran complains of shooting pain in her posterior right heel with decreased sensation over dorsolateral right foot. X-rays were ordered and showed generalized demineralization compatible with osteoporosis or disuse atrophy. Degenerative changes were seen involving midfoot and first metatarsophalangeal joint spaces, relatively mild. There was plantar os calcis spurring.  Dr. Hammersley recommends hardware removal of the screws in the distal tibia.

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)
SMITH,DEBORAH KAY
3771 S SR 9
COLUMBIA CITY, INDIANA  46725

VISTA Electronic Medical Documentation
Printed at MARION VA MEDICAL CENTER

# Progress Notes

8-14-14 The Veteran was seen by her primary care provider for medical clearance for surgery. She reported that she has pain to lateral and medial ankle as well as numbness to bilateral toes. She states that she has been unable to drive since September 2013.

August 22nd, 2014 surgery of removal of hardware is the result of unnecessary surgery performed on 1-5-2014. Dr. Hammersley also performed partial neurectomy of the sural nerve that was not on the surgery consent. The surgery dictation does not correlate with physical anatomy which leads to consider this procedure not indicated.

2-26-15 Veteran follows up with Dr. Hammersley for very weak lower right musculature and pinching sensation of lateral aspect right ankle along course of peroneus longus tendon right ankle. 3-15-15 MRI was completed that showed significant thickening and heterogeneous signal with frayed appearance of the peroneus brevis and peroneus longus. Mild surrounding edema is seen associated with this finding. Given history of peroneus brevis repair, it is unclear if this represents postsurgical change or interstitial tear. Posterior tibialis tendon also demonstrates heterogeneous signal at its insertion. Given lack of significant interval change since prior study, suspect this represents postsurgical change. Dr. Hammersley recommended continued therapy and to follow up in 4 months. On 9-10-15 the Veteran continues to have pain and weakness and was ordered an EMG. EMG was unable to determine degree of peripheral neuropathy or presence of compression neuropathies.

September 2016, Veteran evaluated and treated by a Non-VA Podiatrist. Non-VA MRI was ordered. The Non-VA podiatrist diagnosed the Veteran with right equinovarus foot, sural mononeuritis, posterior tibial tendinitis, an ankle instability. Surgery was performed on for a triple arthrodesis, sural neurectomy, burying sural nerve in bone, and gastrocnemius recession on 10-24-16.

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran continues to have pain and instability and was offered thorough evaluation with podiatry. She has an appointment scheduled on 4-17-18.

Advisement of 1151 claims process and right to file administrative tort claim: The Veterans was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle

---

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| SMITH,DEBORAH KAY<br>3771 S SR 9<br>COLUMBIA CITY, INDIANA  46725 | Printed at MARION VA MEDICAL CENTER |

# Progress Notes

```
260-426-5431 ext 71522

/es/ JANA M BAKLE
RISK MANAGER
Signed: 04/11/2018 12:44
```

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, If available)**
SMITH,DEBORAH KAY
3771 S SR 9
COLUMBIA CITY, INDIANA  46725

**VISTA Electronic Medical Documentation**
Printed at MARION VA MEDICAL CENTER

**Page 32 of 103**

Page 4

```
-------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                  Progress Notes
-------------------------------------------------------------------------
NOTE DATED: 02/05/2018 12:03
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
VISIT: 02/05/2018 12:03 FTW A NOTE-X
Date/Time of Discussion: 1/29/17 @ 3pm

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
conference room

Names and identity of those present:
 Ephraim Shields- Veteran
 Dr. McBride- Chief of Staff
 Dr. Becker- Podiatrist
 Nicole Gust- HSS to COS
 Jana Bakle- Risk Manager

Discussion points of the adverse event:

Veteran had a history of injury in 1988 of left ankle and chronic sprain. He had
an MRI completed on 9-3-14 that showed some arthritis in the ankle joint and
unremarkable ligaments other than the anterior talofibular ligament was mildly
thickened and the deltoid ligament had an osseous fragment interposed that was
replaced by scar tissue.
He was evaluated by Dr. Hammersley on 11-21-14 noted that veteran had flat foot
and parathesia tarsal tunnel of left foot. Surgery was scheduled for 7-31-15.
Dr. Hammersley diagnosed the Veteran with left ankle instability, ruptured of
anterior talofibular ligament, calcaneofibular ligament, and deltoid ligaments
as well as the syndesmotic ligament; tarsal tunnel syndrome and plantar
fasciitis of the left foot. MRI did not support this diagnosis. Veteran
developed a wound post surgery. However, this was never documented by Dr.
Hammersley. Veteran was release backed to work in December 2015. July 2016
Veteran was seen in podiatry by a different podiatrist for ankle/foot pain,
tingling on the top of the foot, and ankle stiffness. Bone Scan and EMG was
ordered. Bone scan resulted that Veteran had complex regional pain syndrome
involving the let ankle.

*      Veteran had an unnecessary major surgery for normal radiologic findings.
*      A tightrope hardware was inserted to repair syndesmosis when syndesmosis
was not injured. The hardware and surgery completely unnecessary.
*      Anterior talofibular ligament and calcaneofibular ligament was not
damaged and did not need repaired.
*      Human Dermal Graft used on an initial surgery is not usually indicated.
*      It was never documented that the Veteran had issues related to Plantar
Fascia.
*      Tarsal Tunnel Decompression was not indicated.
*      Veteran was later diagnosed with complex regional bone syndrome of the
left ankle. It is recommended to not have any further surgeries on his left
foot/ankle. Therefore, the unnecessary tightrope hardware cannot be removed.


Offer of assistance, including arrangements for a second opinion, additional
monitoring, expediting clinical consultations, bereavement support:

Due to diagnosis of complex regional pain syndrome, the Veterans treatment
             ** THIS NOTE CONTINUED ON NEXT PAGE **
WORK COPY ========= UNOFFICIAL - NOT FOR MEDICAL RECORD ========= DO NOT FILE
SHIELDS,EPHRAIM N                                    Printed:02/05/2018 12:04
             VA NORTHERN INDIANA HEALTHCARE SYSTEM
                  Pt Loc: OUTPATIENT                Ph:260-710-3958
========================= CONFIDENTIAL INFORMATION =========================
```

                                            EXHIBIT 12

```
------------------------------------------------------------------------
** WORK COPY - NOT FOR MEDICAL RECORD **                   Progress Notes
------------------------------------------------------------------------
02/05/2018 12:03     ** CONTINUED FROM PREVIOUS PAGE **
```

options for his continuing left ankle/pain issues would be aggressive physical therapy, tens unit, and pain management. He states he is no longer able to run anymore. He used to officiate basketball games and had to give that up.


Advisement of 1151 claims process and right to file administrative tort claim: Mr. Shields was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
Mr. Shields was given Jana Bakle's contact information to follow up with any additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


                    Signed by: /es/ JANA M BAKLE
                               RISK MANAGER
                               02/05/2018 12:03

USDC IN/ND case 1:19-cv-00013-TLS-SLC document 1-1 filed 01/11/19 page 35 of 103

# Progress Notes

LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: APR 16, 2018@10:57      ENTRY DATE: APR 16, 2018@10:57:21
    AUTHOR: BAKLE,JANA M      EXP COSIGNER:
    URGENCY:                          STATUS: COMPLETED

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: April 2, 2018

Place of Discussion (Reason for any delay in the disclosure):  Fort Wayne
Conference Room

Names and identity of those present:
Dr. McBride- Chief of Staff
Nicole Gust- HSS to COS

Discussion points of the adverse event:

Veteran presented to Dr. Hammersley on 04/18/2014 for right ankle pain. Dr.
Hammersley's physical exam noted bilateral excessive inversion of the ankle with
tenderness over anterolateral aspect of the ankle. He documented that the x-rays
show no acute fractures or dislocations. He diagnosed the patient with Ankle
instability bilateral and planned to perform surgery. Patient was consented for
Reconstruction of Ankle Ligament with Graft on 05/23/2014 and taken to the OR on
the same day for Repair of Syndesmotic Ligament of the Right ankle and anterior
talofibular ligament of the right ankle.

Dr Hammersley did not appropriately assess the Veteran. The diagnosis was based
from a normal set of foot and ankle x-rays. No advanced imaging was performed to
visualize disruption of any of the ankle ligaments. The physical exam does not
document an anterior drawer sign to either ankle nor any pain to the
syndesmosis.

There was no MRI or CT scan to diagnosis soft tissue injuries. Conservative
treatment options (PT, Bracing, or range of motion exercise) were not exhausted
prior to surgery.

Tightrope implants was used. Tightrope implants is not indicated for ankle
instability. There was no tib/fib syndesmosis evaluation on physical exam or
diagnostic studies.

The documented procedure description that was performed was not indicated and
performed incorrectly.

*     Inaccurate Diagnosis
*     Lack of or inappropriate diagnostic testing.
*     Studies or imaging do NOT confirm surgical diagnosis or findings.
*     Use of inappropriate implants or hardware during surgery.

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
PHILLIPS,MARSHALL JR
611 RIVER ROCK PASS
FORT WAYNE, INDIANA  46814

VISTA Electronic Medical Documentation
Printed at FORT WAYNE VA MEDICAL CENTER

# Progress Notes

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran had no change in ankle stability after surgery and was offered a thorough evaluation from the podiatry service.

Advisement of 1151 claims process and right to file administrative tort claim:   The Veterans was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


/es/ JANA M BAKLE
RISK MANAGER
Signed: 04/16/2018 10:57

---

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| PHILLIPS,MARSHALL JR<br>611 RIVER ROCK PASS<br>FORT WAYNE, INDIANA  46814 | Printed at FORT WAYNE VA MEDICAL CENTER |

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>VA Regional Council<br>575 N. Pennsylvania<br>Indianapolis, IN. 46204 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse). (Number, Street, City, State and Zip Code)<br><br>Vincent J. Colombini<br>880 Chalet Dr #203<br>Berne, IN 46711 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☐ CIVILIAN | 5. MARITAL STATUS<br>m | 6. DATE AND DAY OF ACCIDENT<br>3-23-12 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Unnecessary surgery performed in error by VA doctor Resulted in on-going problems and constant pain in right Foot/Ankle. Diagnosis and Tests did not show any need for surgery as performed. (See Attached Report) and Actually Created issues that did not exist prior to surgery

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. Constant Pain, Requires use of cane, Difficulty walking, Difficult and painful to drive, Foot and Ankle turn in-ward - hurt and unnecessary wear on shoes. Unable to work due to difficulty in driving. Housebound for 4 mos after surgery no longer able to participate in sports & activities previously enjoyed

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY<br>$150,000.00 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>Vincent John Colombini Jr | 13b. Phone number of person signing form<br>260-589-8522 | 14. DATE OF SIGNATURE<br>3-12-18 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109        NSN 7540-00-634-4046        STANDARD FORM 95<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

EXHIBIT 14

March 3, 2018


To the Veteran's Administration:


On October 12, 2012, I had ankle surgery at the Fort Wayne, Indiana, Veteran's Hospital to replace tendons in my ankle. Dr Brad Hammersley, performed the surgery. After surgery, Dr.Hammersley, indicated he replaced the tendon and that I would be relieved of any swelling or pain I had previously been experiencing.

After several months, I continued to have the pain and swelling and now 5+ years later I continue the same symptoms.

Through discovery with the VA in Fort Wayne, Indiana, the medical team has determined that the surgery was performed without indication and no supporting evidence making the tendon replacement necessary, and that there had not been tendon replacement. The symptoms and findings in October of 2012, could have been treated with physical therapy and resulted in complete recovery.

Indications found are, no tendon had been replaced and furthermore the procedure that Dr. Hammersley performed caused more damage to my foot and ankle and now over the continued walking and use of my foot/ankle in the past 5+ years, I continue to have problems and an additional surgical procedure will be necessary to correct the issue.

The Podiatry Team at the VA in Fort Wayne, Indiana has been very attentive and is currently testing through x-ray, MRI and CT scan to move forward with a solution.

At this time, I know that I will be submitting to additional surgery which will include more time in recovery staying off my feet, inducing a lot of pain and inconvenience based on the negligence of Dr. Hammersley.

Please consider my claim for $300,000, in compensation for the inconvenience, pain and suffering, and the risk of another surgery. I am a Type 2 diabetic who is insulin dependent and anytime surgery of the limbs is involved there are concerns for infection and even the loss of limbs.


Thank You,


Billy McGuire, 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


                    **EXHIBIT 15**

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>VA Regional Council<br>575 N. Pennsylvania<br>Indianapolis, IN. 46204 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br>*Billy McGuire*<br>*907 Villa Terrace*<br>*KENDAllville, IN. 46755* |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 5. MARITAL STATUS<br>*MArried* | 6. DATE AND DAY OF ACCIDENT<br>*October 12, 2012* | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

*See Attached document*

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

*N/A*

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| *Rachel Welch-McGuire (wife)* | *907 Villa Terrace Kendallville, In. 46755* |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>*N/A* | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH<br>*N/A* | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*Billy McGuire* | 13b. Phone number of person signing form<br>*260-3181471* | 14. DATE OF SIGNATURE<br>*3-2-18* |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109        NSN 7540-00-634-4046      STANDARD FORM 95<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  □ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    □ No

N/A

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?   □ Yes    □ No    17. If deductible, state amount:

N/A

N/A

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

N/A

19. Do you carry public liability and property damage insurance?  □ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    □ No

N/A

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in Item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in Item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95    BACK

COPY

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the Instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>VA Regional Council<br>575 N. Pennsylvania<br>Indianapolis, IN. 46204 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) MARTIN L. HEIDLER SR.<br>1509 Cty Rd 151<br>Grover Hill OH 45849 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☐ CIVILIAN | 5. MARITAL STATUS<br>MARRIED | 6. DATE AND DAY OF ACCIDENT<br>2013-2014-2015 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.) Im Prope diagnosis of Achilis Tendon Left leg. Not one time But Two time, leaving with Mild pain to left leg and foot. Numness across top of left foot tingling Sensation 3 toes on left foot cold all the time pain and suffering for two yrs will reoperating Not much driving, hunting or fishing. leg get num can hardly walk for a distance See attached STATEMENT IN SUPPORT OF CLAIM.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

SEE ATTACHED STATEMENT IN SUPPORT OF CLAIM.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|  |  |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY Left Leg + foot | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>500.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>Martin Heidner Sr | 13b. Phone number of person signing form<br>419-263-8023 | 14. DATE OF SIGNATURE<br>3-14-2018 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109

NSN 7540-00-634-4046

**Page 41 of 103**

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2     EXHIBIT 16

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: VA Regional Council 675 N. Pennsylvania Indianapolis, IN 46204 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) Swisher, Robert J PO Box 162 Uniondale IN 46791 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☒ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH 26 Oct 68 | 5. MARITAL STATUS Divorced | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, Injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.) I am filing a medical malpractice regarding Dr. Hammersly for surgery performed on IMN basis Along with five other inaccuracies. 1) Inaccurate Diagnosis 2) Studies or images do Not confirm surgical diagnosis or findings 3) Treatment or procedure not performed correctly. 4) Patient injury related to surgery causing patient to have a second surgery. 5) Use of inappropriate implants or hardware during surgery.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. See Attached Notes, Progess Notes

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| | $300,000 | | $300,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) Swisher, Robert | 13b. Phone number of person signing form (260) 273 65 75 | 14. DATE OF SIGNATURE |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

65-109

NSN 7540-00-634-4046

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 17

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☒ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☒ No      17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95   BACK

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | **FORM APPROVED OMB NO. 1105-0008** |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) |
|---|---|
| VA Regional Council<br>575 N. Pennsylvania<br>Indianapolis, IN. 46204 | JOHN D GROSS  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<br>11238 Parker's Bay Drive<br>Ft Wayne, IN  46845 |

| 3. TYPE OF EMPLOYMENT<br>□ MILITARY  ☒ CIVILIAN | 5. MARITAL STATUS<br>M | 6. DATE AND DAY OF ACCIDENT<br>N/A | 7. TIME (A.M. OR P.M.)<br>N/A |
|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See attached

| 9. | **PROPERTY DAMAGE** |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

| 10. | **PERSONAL INJURY/WRONGFUL DEATH** |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See attached

| 11. | **WITNESSES** |
|---|---|
| **NAME** | **ADDRESS (Number, Street, City, State, and Zip Code)** |
| Sylvia Gross | 11238 Parker's Bay Drive<br>Ft Wayne, IN 46845 |

| 12. (See instructions on reverse.) | **AMOUNT OF CLAIM (in dollars)** | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY<br>$300,000 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$300,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>John D Gross | 13b. Phone number of person signing form<br>260-485-2902 | 14. DATE OF SIGNATURE |
|---|---|---|

| **CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM** | **CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS** |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

| 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

EXHIBIT 18

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No

N/A

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?    ☐ Yes    ☐ No    17. If deductible, state amount.

N/A

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

N/A

19. Do you carry public liability and property damage insurance? - ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

N/A

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95    BACK

Basis of Claim:  My claim is premised on the medical malpractice of a VA doctor.  My wife and I were invited to a meeting on Friday, February 9, 2018 with the Fort Wayne VA Chief of Staff, Dr. Wayne McBride, Podiatrist Dr. Becker, and Jana Bakle, R.N., Risk Management.  In that meeting, we were advised that Dr. Brad Hammersley provided me with sub-standard treatment (described as below the VA's standard of care) by performing unnecessary surgery on my Achilles' tendon on November 19, 2014.  Dr. Hammersley misdiagnosed me with an Achilles' tendon rupture, and failed to perform an MRI at my November 15, 2014 pre-op appointment to confirm his diagnosis before operating.  There was no rupture to the Achilles' at all; however, Dr. Hammersley severed the tendon so that he could repair it.  Further, Dr. Hammersley removed the stitches from the incision site prematurely and before it was fully healed, causing me to develop a staph infection that resulted in a six-day hospital stay beginning on December 31, 2014.  As my treating podiatrist, Dr. Hammersley owed me a duty of care to perform his treatment with the degree of skill and proficiency exercised by a reasonable doctor under similar circumstances, which was clearly breached.  As a result, I not only endured an unnecessary surgery but also complications and an extended recovery period which severely diminished my quality of life, as outlined below.  Until the February 9 meeting, I was unaware of Dr. Hammersley's egregious breach of his duty of care as a medical professional.

State Nature and Extent of Each Injury:

The unnecessary surgery performed by Dr. Hammersley involved him cutting into the tendon and stretching the tendons to repair it. The surgery he advised would be approximately 1-1/2 hours was 3-4 hours which caused my wife anxiety until someone came out after two hours to say everything was fine. Dr. Hammersley came out after the extended time and advised my wife that the surgery took so long because the Achilles was so frayed that it required trimming off those areas and stretching them to meet to allow stitching together.

I was not able to put any weight on that leg whatsoever until the first week of March, 2015 when I could walk unassisted. As a result, for approximately four months, I was largely confined to a chair in my home. During that time, I was unable to walk, dress myself, shower, or go to the bathroom unaided. I could not fix myself meals. I could not travel. I could not play with my grandchild. Other than going to doctor's appointments, I could not do anything outside of the house, such as going out to eat, running errands, or doing any of the activities that I previously enjoyed. My wife served as my constant caregiver during this time, cleaning and changing dressings as ordered by Dr. Hammersley, bathing and dressing me, bringing my meals to my chair, assisting in toilet functions and had to lift me into my wheelchair for Christmas meals with my family. As a result of the surgery, I endured significant and ongoing pain until approximately April, 2015 and now have a limp.

As noted above, I also contracted a staph infection as a result of Dr. Hammersley's actions. I was hospitalized on New Year's Eve, and had to remain for nearly a week. My oldest daughter was visiting from the East Coast, and my hospitalization interfered with my ability to spend time with her.

Due to this unnecessary surgery, I also had to undergo much follow-up care, which was inconvenient for both myself and my spouse, who had to drive me to these appointments. We attended three appointments at the VA hospital in Marion, Indiana on December 2, December 18 and December 23, where Dr. Hammersley was based, which is approximately 1 hour (a 2-hour round trip) from my home in Fort Wayne. In addition, due to the staph infection as well as ongoing redness and soreness, I made three trips to the VA emergency room in Fort Wayne on December 29, 30, and 31 for this situation before hospitalization and additional trips through April 2, 2015.

You have my permission to access to the medical records related to this surgery.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: <br> VA Regional Council <br> 575 N. Pennsylvania Street <br> Indianapolis, IN  46204 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) <br> Deborah Fortier <br> 495 Amberwood Circle <br> Kokomo, IN  46901 |
|---|---|

| 3. TYPE OF EMPLOYMENT <br> ☒ MILITARY  ☐ CIVILIAN | 5. MARITAL STATUS <br> Divorced | 6. DATE AND DAY OF ACCIDENT <br> 11/13/2015 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See Attached Addendum Exhibit 1

**9.** PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

**10.** PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See Attached Addendum Exhibit 1

**11.** WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Jana M. Bakle, Risk Manager of the VA | VA Northern Indiana HCS <br> 1700 E. 38th Street <br> Marion, IN  46953 |

12. (See instructions on reverse.) AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| 0.00 | 1,250,000 | 0.00 | 1,250,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) <br> *Deborah Fortier* | 13b. Phone number of person signing form <br> 765 563 4430 | 14. DATE OF SIGNATURE <br> 5-22-2018 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM <br> The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS <br> Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |
|---|---|

95-109                    NSN 7540-00-634-4046                    STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 19

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No

N/A

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐Yes   ☐No    | 17. If deductible, state amount.

N/A

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

N/A

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

If instruction is needed in completing this form, the agency listed in Item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in Item #12 of this form.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. Authority:  The requested information is solicited pursuant to one or more of the following:  5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose:  The information requested is to be used in evaluating claims.
C. Routine Use:  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond:  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95    BACK

**8. BASIS OF CLAIM (STATE IN DETAIL THE KNOWN FACTS AND CIRCUMSTANCES ATTENDING THE DAMAGE, INJURY, OR DEATH, IDENTIFYING PERSONS AND PROPERTY INVOLVED, THE PLACE OF OCCURRENCE, AND THE CAUSE THEREOF)**

*(Cont'd from Page 1 of the SF-95 Form)*

On November 13, 2015, Deborah Fortier ("Deborah") underwent an Arthrodesis of the $1^{st}$, $2^{nd}$, and $3^{rd}$ metatarsal joint in her left foot using screw fixation performed by Dr. Hammersley. The procedure was done improperly due to misalignment of the screws utilized, and failure to use appropriately sized screws.

On December 31, 2015, seven weeks post-operation, Dr. Hammersley ordered Deborah to begin weight-bearing. This was ordered despite the fact that x-rays taken on the same day did not show fusion of the bones.

On February 1, 2016, Dr. Hammersley documented that Deborah had done some walking in her boot against his medical advice. This statement was inaccurate, as he previously instructed the patient to begin weight-bearing. The x-rays taken this day show one of the screws projecting into the joint space. Dr. Hammersley planned surgery to remove the screw, but Deborah developed pinkeye and the surgery was rescheduled. Two days prior to the second surgery, Dr. Hammersley had a major health incident and was placed on medical leave.

On April 20, 2016, Deborah was seen by another podiatrist, Dr. Becker, since Dr. Hammersley was on medical leave. Deborah had been in a boot since her first surgery. A CT scan was ordered and completed on May 18, 2016, which showed an incomplete fusion of the third tarsometatarsal joint with the third tarsometatarsal screw terminating between the second and third cuneiforms. A longitudinally oriented second tarsometatarsal screw terminates at the navicular cuneiform joint space. Deborah was notified of the results of the CT scan and did not follow-up with the VA podiatry service. Instead, Deborah followed-up with a non-VA provider who removed the screws on September 21, 2016.

On February 28, 2018, Deborah was sent a letter from Michael E. Hershman, the Director of the VA Northern Indiana Health Care System, in Marion, Indiana, attached as Addendum A. The letter states: "We have recently performed a review of podiatric surgery cases performed here at the VA Northern Indiana Health Care System. As a result of our review, it was learned that your past podiatric procedure may not have met the standard of care." Mr. Hershman confirmed a meeting with Deborah and stated that the purpose of the meeting was to discuss the Veteran's podiatric care and to explain how the VA felt it deviated from the standard of care. Additionally, Mr. Hershman stated that he would like to discuss the possibility of having another podiatric evaluation to determine if further surgery or additional treatment would be required.

On March 8, 2018, Deborah met with Ms. Bakle and disclosed Dr. Hammersley's medical malpractice that occurred during Deborah's first surgery on November 13, 2015. The Risk Manager showed Deborah what her x-rays and CT scans showed and what the surgery outcome should have been versus what the actual outcome was. This was the first time Deborah learned that she may have suffered injury as a result of medical malpractice. Deborah also received a report from the VA highlighting the aforementioned negligent conduct, and this is attached as Addendum B.

Deborah has not walked on her foot since her surgery on September 21, 2016 when the non-VA provider removed the screws. It is highly likely that Deborah will be confined to the use of wheelchair for the rest of her life and will require future surgery on her left foot.

The medical care rendered by Dr. Hammersley and the Department of Veteran Affairs through their agents, employees, physicians and healthcare providers to Deborah Fortier, was negligent and below the appropriate standard of care in one or more of the following respects:

1. Negligently performed Ms. Fortier's Arthrodesis of the $1^{st}$, $2^{nd}$, and $3^{rd}$ metatarsal joint in her left foot;
2. Failed to provide appropriate post-operative care and treatment, including but not limited to the negligent recommendation to bear weight seven weeks post-operation; and
3. Failed to appropriately, accurately, and completely document Ms. Fortier's medical treatment.

**13.   Plaintiff's Legal Representative:**

Kent Winingham, Attorney #34826-29
WILSON KEHOE WININGHAM, LLC
2859 N. Meridian Street
Indianapolis, IN 46208
Tel: 317.920.6400
Fax: 317.920.6405
Email: Kwiningham@wkw.com

See attached Addendum C – Contract Employing Attorneys to establish proof of representation.

**The following items are attached:**

Addendum A:   Letter from VA Director Michael E. Hershman to Deborah Fortier

Addendum B:   VA Notes from Meeting on March 8, 2018

Addendum C:   Contract Employing Attorneys



DEPARTMENT OF VETERANS AFFAIRS
Veterans Affairs Northern Indiana Health Care System
2121 Lake Avenue
Fort Wayne, IN 46805-5100
(800) 360-8387

February 28, 2018

DEBORAH KAY FORTIER
495 AMBERWOOD CIR
KOKOMO, IN 46901

Dear Ms. Fortier,

We have recently performed a review of podiatric surgery cases performed here at the VA Northern Indiana Health Care System.  As a result of our review, it was learned that your past podiatric procedure may not have met the standard of care.

This letter is confirming your meeting with VA Northern Indiana Health Care System representatives on March 8, 2018 at 12:15pm on the Marion VA Campus, Building 2 in the Director's Conference Room.

We would like to meet with you to discuss your podiatric care and explain how we feel it deviated from the standard of care.  We would also like to discuss with you the possibility of renewed podiatric evaluation to determine if further surgery or other treatment would be indicated.  Please call (260) 426-5431, extension 71513 if you have any further questions, concerns or if you need to reschedule this meeting.

We look forward to meeting you and are prepared to answer any questions you may have.  We appreciate being able to meet your care needs and look forward to continuing to partner in your health care.

Sincerely,

Michael E. Hershman, MHA, FACHE
Director

Addendum A

# *VA Notes*

| | |
|---|---|
| **Source:** | VA |
| **Last Updated:** | 27 Mar 2018 @ 2207 |
| **Sorted By:** | Date/Time (Descending) |

VA Notes from January 1, 2013 forward are available 3 calendar days after they have been completed and signed by all required members of your VA health care team. If you have any questions about your information please visit the FAQs or contact your VA health care team.

| | |
|---|---|
| **Date/Time:** | 20 Mar 2018 @ 1831 |
| **Note Title:** | INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT |
| **Location:** | VA NORTHERN INDIANA HCS |
| **Signed By:** | BAKLE,JANA M |
| **Co-signed By:** | BAKLE,JANA M |
| **Date/Time Signed:** | 20 Mar 2018 @ 1832 |

**Note**

LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: MAR 20, 2018@18:31   ENTRY DATE: MAR 20, 2018@18:31:49
   AUTHOR: BAKLE,JANA M     EXP COSIGNER:
   URGENCY:             STATUS: COMPLETED

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: 3-8-18

Place of Discussion (Reason for any delay in the disclosure):   Marion
Conference Room
Names and identity of those present:
Deborah Fortier-Veteran
Tracy- Veterans Friend
Dr. McBride- Chief of Staff
Dr. Becker- Podiatrist
Nicole Gust- HSS to COS
Jana Bakle-Risk Manager

Discussion points of the adverse event:

Veteran was consulted to Dr. Hammersley on 9/2/15 for chronic pain in both feet.

She had a history of ORIF surgery on left foot from a previous injury. Dr. Hammersley states the left foot x-ray shows show degenerative changes at tarsometatarsal articulation. He diagnosed her with traumatic arthritis left

Addendum B

foot and lisfranc fracture/dislocations bilateral. He ordered a CT scan and continued Ritchie braces.

CT performed on 9/15/15 that did not support the Lisfranc or Tarsometatarsal fracture/dislocation.

Veteran has surgery on 11/13/15 for Arthrodesis of the 1st, 2nd, and 3rd metatarsal
joint, left foot using screw fixation. The procedure was done improper. The screws were all in the same direction not allowing for good stability. Also, the

screws used were too long.

Dr. Hammersley ordered the Veteran on 12/31/15 to begin weightbearing. Seven weeks post-operative is too early for Veteran to bear weight. This should have been 10-12 weeks. The x-rays dated 12/31/15 do not show fusion of the bones, further indicating that she should not be weight bearing.

2/1/16 Dr. Hammersley documents that the Veteran has done some walking in her bot against medical advice which is inaccurate since he documented the previously instructing the patient to begin weight bearing. That visits x-ray shows one of the screws is projecting into the joint space. He had planned surgery to remove screw. However, the Veteran developed pink eye and the surgery

was canceled.

4/20/16 The Veteran was seen by another podiatrist due to Dr. Hammersley on medical leave. The Veteran stated that she has been in a boot since surgery. CT was ordered and completed on 5/18/16 that showed incomplete fusion of the third tarsometatarsal joint with the third tarsometatarsal screw terminating between the second and third cuneiforms. A longitudinally oriented second tarsometatarsal screw terminates at the navicular cuneiform joint space.

Veteran was notified of the results of the CT scan and did not follow up with VA

podiatry service. She instead followed-up with Non-VA provider who removed the screws.


*       Studies or imaging do Not confirm surgical diagnosis or findings.
*       Treatment or procedure not performed correctly. The hardware used were too long and not fixated correctly.
*       Lack of appropriate or incomplete medical record documentation.
*       Inappropriate or incomplete post-operative follow up. Veteran was ordered to walk too early which caused delay in fusion and screw displacement.

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran states she has not walked on her foot since her surgery in November 2015.  She said she is in a wheel chair for life. She was offered a thorough evaluation from podiatry. She is scheduled on 4-10-18.

Advisement of 1151 claims process and right to file administrative
tort claim: The Veterans was informed of his rights to file a 1151 disability
claim and/or administrative Tort Claim. Financial Compensation after an injury
brochure was provided to the Veteran as well as a blank disability claims
application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any

additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522

/es/ JANA M BAKLE
RISK MANAGER
Signed: 03/20/2018 18:32

| | |
|---|---|
| Date/Time: | 20 Mar 2018 @ 1139 |
| Note Title: | HT NOTE |
| Location: | VA NORTHERN INDIANA HCS |
| Signed By: | BEITLER,WENDY M |
| Co-signed By: | BEITLER,WENDY M |
| Date/Time Signed: | 20 Mar 2018 @ 1149 |

**Note**

LOCAL TITLE: HT NOTE
STANDARD TITLE: CARE COORDINATION HOME TELEHEALTH NOTE
DATE OF NOTE: MAR 20, 2018@11:39    ENTRY DATE: MAR 20, 2018@11:40:28
   AUTHOR: BEITLER,WENDY M    EXP COSIGNER:
   URGENCY:        STATUS: COMPLETED

Type of Encounter: Telephone
Care coordinator called veteran/caregiver
Diagnosis: Obesity
Length of conversation: 5-10 minutes

FORTIER, DEBORAH (-6231)
Vital Sign Data for: 02/19/2018 - 03/20/2018
(All times are EST; All weights are lbs)

Primary DMP: VHA-Wt Mgmt
Comorbid(s):

===================

Deborah Fortier, as client(s), employ(s) Wilson Kehoe Winingham LLC, attorneys of Indianapolis, Indiana, to prosecute by lawsuit or otherwise, in the discretion of the attorneys, the client(s) claim arising from Medical Malpractice. The attorneys agree to represent the client in obtaining a Medical Review Panel opinion, at which time continued representation shall be at the discretion of both the clients and attorneys.

The client(s) agrees to pay to the attorneys an amount of money equal to Fifteen Percent (15%) of the gross amount of any and all sums received or recovered, whether by way of settlement or by judgment paid from the Indiana Patients' Compensation Fund, as payment for the attorneys' services. This sum will be paid before the reduction of expenses. The percentage of attorney fees recovered on behalf of any other healthcare defendant(s) shall be adjusted to whatever Percent is necessary, or as otherwise provided by the Tort Claims Act, **so that the total attorney fees for all amounts recovered by way of settlement or judgment shall be as much as, but not to exceed, 33 1/3 % of the gross amount of all sums received or recovered before reduction of expenses**.

It is understood and agreed by the client(s) and attorneys that in the event of recovery, all out-of-pocket expenses incurred in the preparation, investigation, or trial of the claim shall be reimbursed to the attorneys out of all sums recovered or received. Examples of out-of-pocket expenses include court costs, subpoena costs, mediation costs, deposition and court reporter costs, videographer costs, medical records costs, expert witness costs, non-local travel costs, medical graphic and illustration services, physician and/or legal nurse consultant services.

It is understood and agreed by the client(s) and attorneys that in the event of recovery, an additional charge of one percent (1%) of the gross settlement will be paid by the client to cover administrative costs. Examples of administrative costs include access to legal research and background databases, telephone calls, faxes, mailing and shipping expenses, copying and printing costs, and local travel and parking.

Said attorneys hereby accept the within employment.

WITNESS our hand(s) and seal(s) this 25th day of April, 2018.

_____
DEBORAH FORTIER

Said attorneys hereby accept the within employment.

Wilson Kehoe Winingham LLC

By: _____
W. KENT WININGHAM

Addendum  C

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| VA Regional Council 575 N. Pennsylvania Indianapolis, IN 46204 | Michael A. Garman 4730 Pleasant Valley Fort Wayne, IN 46825 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 09/11/1980 | Married | 04/13/2012 | Friday | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See "narrative" attached hereto as Exhibit 1

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Not applicable

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See "narrative" attached hereto as Exhibit 1.

| 11. | WITNESSES | |
|---|---|---|
| NAME | | ADDRESS (Number, Street, City, State, and Zip Code) |
| Michelle Garman | | 4730 Pleasant Valley Drive Fort Wayne, IN 46825 |

| 12. (See instructions on reverse). | | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). | |
| 0.00 | 400,000.00 | 0.00 | 400,000.00 | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Michelle Garman* | (260) 755-9418 | 6-8-18 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-534-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 20

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident Insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No |
|---|

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No | 17. If deductible, state amount. |
|---|---|

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Not applicable

19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

---

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

---

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

---

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

**SF95 Box 8**

Michael had had left foot pain for two years when he went to see podiatrist, Dr. Hammersley at the VA in 2011. Dr. Hammersley documented a left fifth metatarsal base fracture and on October 14, 2011, performed an ORIF of the fifth metatarsal. On February 24, 2012, Dr. Hammersley performed a procedure to remove a K-wire that was causing Michael irritation. On April 13, 2012, Dr. Hammersley removed the hardware he had previously placed and transferred the peroneus brevis tendon to the cuboid. **This is the procedure that began the malpractice.** Michael does not know why Dr. Hammersley performed this specific procedure and it appears that the surgery was done incorrectly. Not only was it inappropriate to anchor the peroneus brevis to the cuboid, but one of the anchors was incorrectly placed in the calcaneal-cuboid joint space.

Over the next three years, Michael continued to see Dr. Hammersley and, not only did Dr. Hammersley fail to mitigate the harm he caused, but he also added to it. Dr. Hammersley did not recognize the incorrect placement of the anchor, he performed nerve blocks without informed consent, and he never adequately treated the left foot issues. On June 12, 2015, Dr. Hammersley finally recognized the incorrect placement of the one anchor and removed it, but he did nothing to stabilize the left foot. Michael followed up with Dr. Hammersley on June 30, 2015 where the sutures were removed, but nothing else was done. Michael has not seen Dr. Hammersley since then. Michael saw another podiatrist, Dr. Shiu, on August 5, 2015, but Dr. Shiu did not make any further recommendations and Michael has not seen another podiatrist since.

Michael trusted that everything Dr. Hammersley did was appropriate and that his pain and suffering was just the unfortunate expected consequence of having a foot fracture. It was not until he had a meeting with the VA Chief of Staff and risk management on March 9, 2018 that he was informed that the initial surgery was done incorrectly. Since then, Michael sought another non-

VA orthopedic surgery opinion.  He saw Dr. Scott D. Karr, M.D. at Ortho Northeast (ONE) in Fort Wayne, Indiana.  Dr. Karr recommended that Michael not bear weight, that he use a roll-a-bout, that he do physical therapy, and that he have a left foot calcaneal-cuboid fusion and possible gastrocnemius recession.  That surgery will be scheduled in the near future.

**Box 10**

The damages that Michael has realized thus far include:

- Complete inability to ambulate (August 2016-present)

- Complete inability to run (April 2012-present)

- Inability to walk long distances (April 2012-August 2016)

- Severe daily pain in the left foot whether ambulating or not (April 2012-present)

- Multiple unnecessary surgeries (4/13/2012, 6/12/15, and one upcoming)

- Loss of family income – his spouse had to reduce her working to care for Michael

- Loss of consortium and services to Michael's wife, Michelle Garman

Additionally, there are likely to be future damages that Michael has not yet realized.  Dr. Karr made it very clear to Michael that even if he performs the recommended surgery, it might not fix Michael's pain or the instability in his foot.  Michael will likely have chronic pain, and even if he is able to ambulate after the next surgery, it is unlikely he will be able to be as active as he was prior to the inappropriate April 2012 surgery.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) |
|---|---|
| VA Regional Council 575 N. Pennsylvania Indianapolis, IN. 46204 | JERRY W. KITTLE 17725 LIMA RD HUNTER TOWN IN. 46748 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY  ☑ CIVILIAN | 5. MARITAL STATUS M | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|

**8.** Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

SEE ATTACHED PAPERS 115] Claim

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

SEE ATTACHED PAPERS 115] Claim

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| DARLEN R KITTLE | SAME |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|  | 1,250,000.00 |  | 1,250,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of person signing form | 14. DATE OF SIGNATURE |
|---|---|---|
| Jerry W Kittle | 260-637-5104 | 6-5-18 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109 NSN 7540-00-634-4046

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 21

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☒ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   |   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance? ☒ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

STATE FARM Mut. Auto Ins. Co.
2550 North Western Ave,
West Lafayette IN. 47906-1332

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95    BACK

## Jerry Wayne Kittle

This is to file for a Title 38 U.S. C. 1151 Claim    My nightmare began in August of 2012 when I met Dr. Brad Hammersly; however, here is the background leading up to that situation.

### December 2009: My wife and I were on a trip to Arkansas visiting friends.

I started having pains in my left side that did not go away but kept increasing.  Our friend's brother- in- law offered to take me to the Arkansas Veteran's Affairs (VA) Hospital; however, I was not enrolled. My work's group insurance did not cover me outside of Indiana.  I drove home with pain escalating in my side, went straight to my doctor's office, and was sent to Parkview Memorial Hospital's emergency room. Before the sun went down, I had an emergency appendectomy.

### January 2010: I signed up for VA Benefits.

Shortly after signing up for VA benefits, my employer changed my employment status from a full time employee with full benefits to an independent contractor with no benefits.  I went to the VA for routine physicals, shots and care in 2010 and 2011. I began having constant, chronic pain in my knees, hips and ankles. In January 2012, I was told that the nearest place where I could get cortisone shots to reduce the pain in these three areas was at the VA Hospital in Indianapolis.

### January 23, 2012:  Cortisone shots began.

I went to the VA Hospital in Indianapolis expecting to get cortisone shots in my knees, hips and ankles. I was told I could only get two shots at a time.  I received a shot in my left knee and one in my right ankle. We continued this course of treatment until August 2012.

### August 2012:  I was told that I needed both knees replaced.

The Indianapolis VA doctor could not tell me what type of knee prosthetic would be installed or which doctor would install it.  I came back to Fort Wayne and talked to my VA family doctor, Dr. Lainez, about the situation and which of the three areas should be addressed first. Deciding on the ankles, she referred me to the new VA podiatrist, Dr. Brad Hammersly.

Dr. Hammersly took x-rays of my feet and ankles. He also looked at my previous x-rays. I told him I was doing fine with the shots. He told me to continue that treatment.

1

## Jerry Wayne Kittle

He said that I did not have a bone spur causing me pain; rather, I had a broken bone on the side of my right foot and it looked like it was an old break. He said that he could fix that quickly, put me in a cast for it to heal and I would be fine. He said he might need to put metal in it and screws to hold it in place. I agreed to have him perform the operation as soon as possible.

### October 26, 2012: Right foot bone repair surgery performed.

Dr. Hammersly put metal on the side of the foot with four screws; however, I was in a boot and no cast when I woke up.

While the side of the foot was now surgically repaired, I still had a lot of pain. He x-rayed the ankle and said that there was no cartilage left in the ankle. There was also one screw coming out of the plate, however, the foot was healing nicely.

### April 17. 2013: The first ankle surgery occurred.

Dr. Hammersly said that while he was in there, he would remove the screw that was coming out of the break repair as well as all of the screws and the metal plate. He did remove most of the screws and the plate.

To replace the ankle cartilage with cadaver cartilage, he would have to cut out a piece of pie shaped bone and scrape out the remaining cartilage then put the "new" cadaver cartilage in. He also put in two new screws to hold the piece of bone in place. He said that I would have a cast on until the ankle healed. When I came out of surgery I had a boot and no cast again.

I was told that I would be fine as long as I used the knee walker and the crutches and did not put any weight on that foot but that I could use the foot slightly to balance myself. I followed his advice to the letter.

When I went in for a checkup and x-ray, there were two more broken screws. I would need another surgery. Dr. Hammersly said he would put longer screws in this time.

### November 28, 2014: The second ankle surgery was performed.

Following surgery, I woke up with a boot and no cast. The longer screws broke again. I don't know why the screws broke. There are still pieces of broken screws in my ankle that no doctor has been able to remove. I also know that I did not put weight on that ankle and I used the knee walker and the crutches faithfully. I followed all of Dr. Hammersly's instructions to the letter. I was raised by a military father who put the fear of God in me and I always follow instructions of those in charge.

2

Jerry Wayne Kittle

## April 28, 2014: The third ankle surgery occurred.

Before the surgery, my wife overheard Dr. Hammersly's supervisor telling him to put a cast on this time. Six weeks later, he took the cast off to x-ray the ankle and I expected him to put another one back on since the ankle was not healed; however, he did not. He put it in a boot. When I went back two weeks later, the screws were broken again.

By now I had worn out the pads on my knee walker. The VA said it could not get me new pads so I was forced to turn the old pads around. I believe that I never put weight on my ankle; I kept it on the knee walker or used the crutches.

By now you would think that Dr. Hammersly would have realized that it needed to be kept in a cast until it was totally healed. It was like he was a stubborn little boy determined not to use a cast.

At the point where the screws had broken again, he threw up his hands and referred me to Dr. Jonathon Norton who Dr. Hammersly said he went to school with. Dr. Hammersly said that Dr. Norton could fix this because he was a better surgeon.

## May 1, 2014. First appointment with Dr. Norton.

Dr. Norton x-rayed my ankle and told me the only thing he could do was to fuse my ankle. He would put me in a handmade leather Arizona boot to stabilize the ankle until the upcoming surgery. During surgery, he would go in and remove the broken screws and put in new screws so that my ankle would no longer move. I told him I wanted to wait until winter because I was fed up with hospitals and surgeries.

## January 7, 2015: Ankle fusion surgery performed.

The surgery was performed at Lutheran Hospital in Fort Wayne and lasted five hours instead of the usual three. Dr. Norton kept trying to remove the broken screws but was only able to remove one. One screw was put in to fuse the ankle. I did wake up with a cast on my ankle.

The cast was replaced at each doctor appointment after the ankle was x-rayed. I had casts on for six months before having the last one removed. The doctor then put my ankle in a new Arizona boot which I was supposed to wear only until October 2015. To this date, I still wear it because it helps with the pain in my ankle. It gives me security against turning my ankle because Dr. Norton told me that if I turn my ankle severely, I will have to have my foot amputated.

3

**March 13, 2018: Institutional Disclosure of adverse event.**

Now I am in shock. There were more errors and negligence than we had ever realized. I have so much pain every day and Dr. Becker has done an MRI of my foot and ankle and determined that there is nothing she can do. I am only 69 years old and I am capable in every other way but I have to live with this burning ankle every day for the rest of my life. I can't work and help my wife pay bills. I can't rototill my garden or work on my car. The list of things I can't do is longer than the list of things I can do.

I live with severe pain in my ankle every day and probably will for the rest of my life, especially when the weather changes. It is worse if I am on my feet for more than a couple of hours.

Dr. Hammersly promised he would fix my foot and ankle and have me back to work in six months. Due to his incompetence, I am crippled for the rest of my life.

*I understand from attending other medical consultations that the cartilage was never missing in my ankle.* Previous x-rays show that my cartilage was fine. I may have had a pulled muscle or torn ligament but I will never know because Dr. Hammersly convinced me the cartilage was gone in my ankle so he could practice replacing it and fail.

I suffer from periods of severe depression and anger. I make life difficult for myself and my family. My wife and I took counseling from Dr. Bishton at the VA for about six months; however, he changed positions and we have not heard from another counselor to be scheduled. We need the counseling.

I understand that shortly after he did my last surgery, Dr. Hammersly was sent to Marion, Indiana to do paperwork for the VA. A year later, he no longer worked for the VA. I pray that he is no longer a practicing podiatrist ruining anyone else's life.

I feel I rightfully deserve $1,250,000 for malpractice and 100% disability going back to the first unnecessary ankle surgery performed on April 17, 2013.

4

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Office of General Counsel (US Department of Veterans Affairs) ATTN: Dennis McGuire, Office of Chief Counsel 441 Wolf Ledges Parkway, Suite 403 Akron, OH 44311 | Carisa A. Snyder 620 West Oakdale Drive Fort Wayne, IN 46807 |

| 3. TYPE OF EMPLOYMENT | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | Married | 01/16/2015 | NA |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

The Claimant, Carisa A. Snyder, was a patient of the VA Northern Indiana Health Care System and received a surgical procedure on her right foot by VA doctor Bradley R. Hammersley, DPM. The surgery was performed on January 16, 2015, and included the removal of the tibial sesamoid right foot with repair of short flexor tendon right foot. This surgery was not medically warranted and was further negligently performed in that the medial tendon arm of the flexor hallucis brevis was accidently cut during the procedure. (Additional information attached)

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Not applicable

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

As indicated in §8 above, the negligent and unnecessary surgery and other breaches of the standard of care by VA doctor Bradley Hammersley, DPM, caused Carisa A. Snyder injury in the form of undergoing the unnecessary surgery itself with related pain, interruption of lifestyle, and rehabilitation thereafter. (Additional information attached)

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Carisa A. Snyder | 620 West Oakdale Drive, Fort Wayne, IN 46807 |
| Dr. Bradley Hammersley | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Additional witness information attached | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 1,250,000 | 0.00 | 1,250,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| D. R. B. [Dennis R. Brown, Legal Representative] | 260-420-2001 | 6-6-18 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction Previous Edition is not Usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|
| 95-109 | | |

EXHIBIT 22

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

**15. Do you carry accident insurance?** ☒ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

Not applicable

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes ☒ No   **17. If deductible, state amount.**

Not applicable

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?** (It is necessary that you ascertain these facts).

Not applicable

**19. Do you carry public liability and property damage insurance?** ☒ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

Not applicable

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

SF-95                                                    Carisa A. Snyder

## CONTINUATION OF §8:

The Claimant had no reason to understand or otherwise know that the procedure performed was not warranted and, further, had not been told of the accidental severing of the medial tendon arm of the flexor hallucis brevis. She further did not know that her medical records and films taken of her right foot did not support a fracture or a procedure until the wrongful, negligent, and unnecessary nature of this procedure was disclosed to her by VA officials in a meeting on March 16, 2018. The Claimant's filing herein is timely in that it is being made promptly, and well within two years of discovering (via disclosure by the VA) that a wrongful and negligent medical procedure had been performed.

More specifically, on August 23, 2014, Claimant presented to VA Dr. Hammersley for right foot pain. She previously had right foot x-rays performed on June 13, 2014, which showed no sign of fracture. Nevertheless, in the August 23, 2014, visit, Dr. Hammersley "interpreted" the same x-rays as evidence of fracture of tibial sesamoid of right foot. Initially, he placed the Claimant in a pneumatic boot for one month.

On October 3, 2014, Dr. Hammersley strangely created and signed two distinct chart notes for the patient. They are identical chart notes with the exception with one says the patient's right foot is healing and the other says it is "not healing." The first suggests that the pneumatic boot be continued while the "not healing" note provides for a return to the clinic in two months. At the two-month visit on December 5, 2014, the Claimant was instructed on and consented to an ostectomy of the right foot. This procedure was scheduled and performed on January 16, 2015, wherein Dr. Hammersley removed the tibial sesamoid right foot and repaired the short flexor tendon right foot. Prior to this procedure, Dr. Hammersley had not performed any advanced imaging (MRI, bone scan, CT scan) to confirm a fracture of the tibial sesamoid and, instead, relied only upon his own "interpretation" of the June 13, 2014, x-rays which had previously been read as having no fracture.

VA officials investigated this matter and further compared x-rays from June 13, 2014, and October 3, 2014, and found there had been no change in the tibial sesamoid between those readings. As such, VA investigators concluded "There is no indication that surgery was warranted."

Furthermore, during the procedure, Dr. Hammersley documented that he accidently cut the medial tendon arm of the flexor hallucis brevis. It is suggested by the records that Dr. Hammersley repaired the interrupted and damaged tendon, though it is unclear presently the success or failure of such repair. This intraoperative occurrence had never been disclosed to the Claimant prior to the March 16, 2018, meeting with the VA representatives.

1

SF-95                                                    Carisa A. Snyder

Dr. Hammersley breached the standard of care multiple times throughout the course of the Claimant's medical history as set forth above. He misread an x-ray from June 13, 2014, and failed to have any other advanced imaging to corroborate his findings. He further breached the standard of care by negligently and unnecessarily performing major surgery on the Claimant's right foot, including removal of tibial sesamoid right foot, despite what turned out to be normal radiologic findings. It is also likely that the short flexor tendon of the right foot was without need of repair, as well.

Dr. Hammersley breached the standard of care further by "accidently" cutting the medial tendon arm of the felxor hallucis brevis during the January 16, 2015, procedure, an event which he failed to disclose to the Claimant. (A question concerning the negligent hiring of Dr. Hammersley by the VA is presently preserved, though presumably not necessary to prove the negligence herein in light of the various admissions made by the VA.)

Claimant suffered injury, harms, and damages as a direct result of Dr. Hammersley's breaches of the standard of care as set forth above. In addition to undergoing the unnecessary procedure of January 16, 2015, Claimant also required two additional surgeries thereafter to treat the injuries sustained as a result of this negligence. Each surgery independently included physical pain, mental suffering, and lost time due to otherwise unnecessary rehabilitation. Further, before the surgery, Dr. Hammersley's misdiagnosis of a fracture required at least one month of Claimant unnecessarily using a pneumatic boot which was additionally disruptive to her normal routine and daily activities.

Claimant further submits that, as a result of Dr. Hammersley's negligence, she continues to suffer from physical pain and limitation to this day. The injuries caused by the unnecessary surgery and the additional follow-up care which was also required has further impacted Claimant's physical condition beyond just the right foot. Specifically, Claimant asserts that she has whole body soreness, aggravation of sciatica, injury to her left leg and to her hips and back as a result of favoring the right foot, constant soreness and achiness, intermittent sharp pain in her foot, permanent limitation, emotional suffering, and increased anxiety.

As a result of this unnecessary surgery and the various breaches of the standard of care by Dr. Hammersley, Claimant's current medical condition means that she is unable to participate in a number of her preferred normal daily activities. While not a comprehensive list, this includes her inability to coach her daughter in soccer, dancing, and cheerleading (which she had done prior to the Dr. Hammersley procedure) and a limitation on how much she could volunteer at her daughter's school (where she previously volunteered so often she had her own office there, but now cannot do the same level of activity). She is similarly volunteering less on a charitable manner, having previously worked as many as twelve hours per month on a volunteer basis at Matthew 25, a local free healthcare clinic where she now is largely unable to participate at all. Family is very important to Carisa, as indicated with regard to her daughter's activities, and the same is also true with regard to activities involving her son who was still in high school at the

2

SF-95                                              Carisa A. Snyder

time of the negligently performed surgery. For her son, she was not a coach, but a participating parent who previously would attend all of his activities but who, since this injury, missed all of her son's cheer events and wrestling meets and, in many respects, switched rolls with him, no longer being the one on which he relied but, instead, often times relying on her son to drive her places for medical care, etc.

Because of her injuries, Carisa's husband, Gabe, has had to pick up the slack for all of the household-related items which she simply could not do the same way as before. Cleaning and other chores, grocery shopping, and other daily household activities have become her husband or her children's responsibility due to these ongoing limitations. Not only has the physical component affected her quality of life, but the emotional harm, the increased anxiety, and the effect that her relative inactivity (as compared to before) has brought on has made the quality of life overall much reduced. One example that stuck with me is that, at the time of the negligent surgery, Carisa had two dogs which she actively walked and enjoyed. Because she could not walk them following this unnecessary procedure, the dogs became difficult to manage, no longer got along with each other, and became overall a problem. Carisa will assert that, directly because of these injuries, she had to give up one of her dogs, which has also been a difficult component of her overall loss.

Carisa has explained that her family lives in California and she has been very limited in her ability to see them because of her physical limitations, though she does have an extended family through her husband that she relies upon heavily. These injuries, in her words, have prevented her from being the "fun aunt" for her nieces and nephews, as she has had to scale back her activity on all fronts. Overall, she has suffered a diminished quality of life and feels like she has actually lost a portion of her life as a result of these injuries.

In terms of direct physical loss, Carisa can only walk short distances without some assistance. If she is in a store, she has to have a shopping cart to lean on. If she walks more than a short distances, she still must use a crutch, even to this day.

**CONTINUATION OF §10:**

Claimant suffered injury, harms, and damages as a direct result of Dr. Hammersley's breaches of the standard of care as set forth above. In addition to undergoing the unnecessary procedure of January 16, 2015, Claimant also required two additional surgeries thereafter to treat the injuries sustained as a result of this negligence. Each surgery independently included physical pain, mental suffering, and lost time due to otherwise unnecessary rehabilitation. Further, before the surgery, Dr. Hammersley's misdiagnosis of a fracture required at least one month of Claimant unnecessarily using a pneumatic boot which was additionally disruptive to her normal routine and daily activities.

3

SF-95                                          Carisa A. Snyder

Claimant further submits that, as a result of Dr. Hammersley's negligence, she continues to suffer from physical pain and limitation to this day. The injuries caused by the unnecessary surgery and the additional follow-up care which was also required has further impacted Claimant's physical condition beyond just the right foot. Specifically, Claimant asserts that she has whole body soreness, aggravation of sciatica, injury to her left leg and to her hips and back as a result of favoring the right foot, constant soreness and achiness, intermittent sharp pain in her foot, permanent limitation, emotional suffering, and increased anxiety.

As a result of this unnecessary surgery and the various breaches of the standard of care by Dr. Hammersley, Claimant's current medical condition means that she is unable to participate in a number of her preferred normal daily activities. While not a comprehensive list, this includes her inability to coach her daughter in soccer, dancing, and cheerleading (which she had done prior to the Dr. Hammersley procedure) and a limitation on how much she could volunteer at her daughter's school (where she previously volunteered so often she had her own office there, but now cannot do the same level of activity). She is similarly volunteering less on a charitable manner, having previously worked as many as twelve hours per month on a volunteer basis at Matthew 25, a local free healthcare clinic where she now is largely unable to participate at all. Family is very important to Carisa, as indicated with regard to her daughter's activities, and the same is also true with regard to activities involving her son who was still in high school at the time of the negligently performed surgery. For her son, she was not a coach, but a participating parent who previously would attend all of his activities but who, since this injury, missed all of her son's cheer events and wrestling meets and, in many respects, switched rolls with him, no longer being the one on which he relied but, instead, often times relying on her son to drive her places for medical care, etc.

Because of her injuries, Carisa's husband, Gabe, has had to pick up the slack for all of the household-related items which she simply could not do the same way as before. Cleaning and other chores, grocery shopping, and other daily household activities have become her husband or her children's responsibility due to these ongoing limitations. Not only has the physical component affected her quality of life, but the emotional harm, the increased anxiety, and the effect that her relative inactivity (as compared to before) has brought on has made the quality of life overall much reduced. One example that stuck with me is that, at the time of the negligent surgery, Carisa had two dogs which she actively walked and enjoyed. Because she could not walk them following this unnecessary procedure, the dogs became difficult to manage, no longer got along with each other, and became overall a problem. Carisa will assert that, directly because of these injuries, she had to give up one of her dogs, which has also been a difficult component of her overall loss.

Carisa has explained that her family lives in California and she has been very limited in her ability to see them because of her physical limitations, though she does have an extended family through her husband that she relies upon heavily. These injuries, in her words, have prevented her from being the "fun aunt" for her nieces and nephews, as she has had to scale back her

4

SF-95                                                      Carisa A. Snyder

activity on all fronts.  Overall, she has suffered a diminished quality of life and feels like she has actually lost a portion of her life as a result of these injuries.

In terms of direct physical loss, Carisa can only walk short distances without some assistance.  If she is in a store, she has to have a shopping cart to lean on.  If she walks more than a short distances, she still must use a crutch, even to this day.

In summary, Claimant suffered pain, limitations, and other damages, some of which are permanent in nature which would not have been there but for the negligent care of Dr. Hammersley.


## CONTINUATION OF §11:

| Name: | Address: |
|---|---|
| Dr. Holly Becker | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Dr. Wayne McBride | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Jana M. Bakle | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Nicole Gust | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Dr. Andrea Bearden | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Dr. Buhk (therapist) | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Dr. Ellis (psychiatrist) | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Dr. Wordel (pain psychology) | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Dr. Belinda Smith (GP) | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Dr. Aaron Nelson (pain) | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Physical therapists | 2121 Lake Avenue, Fort Wayne, IN 46805 |
| Matthew W. Robison, DPM | 7559 West Jefferson Blvd., Fort Wayne, IN 46804 |
| Nathaniel R. Hiss, DC | 6215 Covington Road, Fort Wayne, IN 46804 |
| Gabe Snyder | 620 West Oakdale Drive, Fort Wayne, IN 46807 |

5

TORT

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

**1. Submit To Appropriate Federal Agency:**
VA Regional Council

**2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)**
DEBORAH K SMITH
3771 S. SR 9
COLUMBIA CITY IN 46725

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☑ CIVILIAN | 5. MARITAL STATUS M | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|

**8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)**

SEE ATTACHED INSTITUTIONAL DISCLOSURE DOCUMENTS

RECEIVED
APR 30 2018
BY:

**9. PROPERTY DAMAGE**

**NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).**

**BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)**

**10. PERSONAL INJURY/WRONGFUL DEATH**

**STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.**

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| | |

**12. (See instructions on reverse.) AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| | | | $15 MILLION |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM**

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) Deborah K Smith | 13b. Phone number of person signing form 260 503 1373 | 14. DATE OF SIGNATURE 4-28-18 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109

NSN 7540-00-634-4046

STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 23

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☐ No   | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95      BACK

# Progress Notes

Printed On Apr 17, 2018

LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: APR 11, 2018@12:44     ENTRY DATE: APR 11, 2018@12:44:12
   AUTHOR: BAKLE,JANA M         EXP COSIGNER:
   URGENCY:                          STATUS: COMPLETED


INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: 3-5-18

Place of Discussion (Reason for any delay in the disclosure):    Fort Wayne
Conference Room
Names and identity of those present:

Deborah Smith-Veteran
Dr. McBride- Chief of Staff
Dr. Becker- Podiatrist
Nicole Gust- HSS to COS
Jana Bakle-Risk Manager


Discussion points of the adverse event:


Patient present with complaints of left foot pain seen by Dr. Hammersley on July
21st, 2009. Diagnosis was painful navicular accessary extremum. Surgery was
performed on 8/4/2009. There was no documented conservative care. Patient most
likely have posterior tibia tendonitis which can be treated with conservatively
care. Surgery can avoid if conservatively care is beneficial. If conservative
care failed, then surgery can consider.

Veteran had a CT ordered for her right foot without any evaluation or indication
documented. Both right and left CT scan did not show any pathology with tendons.
He did not order further diagnostic testing to confirm pathology with the
tendon. Surgery was scheduled for bilateral tibialis posterior tendon repair
with graft jacket graft.


On 1/22/2010, surgery was performed again on her left foot, as well as the right
foot. Dr. Hammersley diagnosed patient with ruptured tibialis posterior tendon
bilateral. There are no clinical histories and imaging studies which indicated
rupture of the tibial tendons bilateral.
Patient cannot have MRI due to recent bone anchor implant of let foot. However,
musculoskeletal ultrasound should've been ordered to rule in rupture of
posterior tibial tendon. Again, there were no conservative treatments. Dr.
Hammersley indicated in the operative report the frayed tendon was resected, but
no rupture. Pathology reported showed "inflammation" of the posterior tibial
tendons. Resection of the inflamed tendon will only be indicated after failed
conservative care. Patient cont'd to have pain thru 2013.

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation
SMITH,DEBORAH KAY                                             | Printed at MARION VA MEDICAL CENTER
3771 S SR 9
COLUMBIA CITY, INDIANA  46725

# Progress Notes

Veteran continues to have pain in her left foot, limiting ambulation. Dr. Hammersley ordered x-rays and diagnosed her with fracture of the navicular tuberosity.  X-rays do not support the diagnosis. Veteran is placed in a cam walker for about six weeks. No further evaluations in podiatry until February 2013 due to continued pain in the left foot at the mid tarsal joint. X-rays were ordered were negative, orthotics were ordered and she was to follow up as needed.

In October 2013, Veteran was seen due to right ankle pain from injuring her ankle on a boat ramp. X-rays were negative. MRI was ordered on 10-18-2013 which showed non-displaced fracture of posterior malleolus and intact peroneal longus and brevis tendon. Non-displaced fracture should be treated conservatively, ORIF with 2 screw fixations is not necessary and does not meet standard of care. Pre-op x-ray on 12-6-2013 showed no displaced fracture of the posterior malleolus. No indications for peroneal longus repair, which is not rupture. Operative report stated, " ... the tendon sheath was incised and the peroneus brevis tendon was noted to have a frayed and flattened appearance just proximal to the right ankle joint. Also, there was noted to be a significantly excess length to it, which was then resected.". The operative report has significant discrepancy from the MRI report and the description of peroneal brevis tendon with significantly excess length is completely illogical.

Patient has surgery on 1-15-2014 - 1. Open reduction and internal fixation of posterior malleolar fracture, right ankle. 2. Repair of peroneus brevis tendon with graft, right ankle. There were no indications for surgery. The procedure technique that was completed on the peroneal brevis tendon was not performed accurately. As well as the x-rays reveal that the screws used were too long and placed into the ankle joint. Post-surgery, the Veteran was not able to wiggle her toes which was a result of the improper surgery technique. Post-operatively the Veteran continued to have diminished sensation of the 4th and 5th toes, lateral aspect of right foot, and unable to dorsi flex and evert the right foot. On 4-9-2014, Dr. Hammersley diagnosed her with failed repair of peroneus brevis and peroneus longus right foot. Veteran had a CT scan on 4-12-14 that showed generalized demineralization throughout the ankle and hindfoot compatible with disuse atrophy.

5-5-2014 Dr. Hammersley performed a fourth surgery at a Non-VA hospital for right ankle repair of peroneal longus tendon and repair of remainder of peroneus brevis tendon with bone anchor to the fifth metatarsal base, also with transfer of the peroneus brevis through peroneus longus tendon.  The surgery was a result of the prior surgery that was not indicated.

7-18-14, Nine weeks post-operatively, Veteran complains of shooting pain in her posterior right heel with decreased sensation over dorsolateral right foot. X-rays were ordered and showed generalized demineralization compatible with osteoporosis or disuse atrophy. Degenerative changes were seen involving midfoot and first metatarsophalangeal joint spaces, relatively mild. There was plantar os calcis spurring.  Dr. Hammersley recommends hardware removal of the screws in the distal tibia.

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)
SMITH, DEBORAH KAY
3771 S SR 9
COLUMBIA CITY, INDIANA  46725

VISTA Electronic Medical Documentation
Printed at MARION VA MEDICAL CENTER

# Progress Notes

8-14-14 The Veteran was seen by her primary care provider for medical clearance for surgery. She reported that she has pain to lateral and medial ankle as well as numbness to bilateral toes. She states that she has been unable to drive since September 2013.

August 22nd, 2014 surgery of removal of hardware is the result of unnecessary surgery performed on 1-5-2014. Dr. Hammersley also performed partial neurectomy of the sural nerve that was not on the surgery consent. The surgery dictation does not correlate with physical anatomy which leads to consider this procedure not indicated.

2-26-15 Veteran follows up with Dr. Hammersley for very weak lower right musculature and pinching sensation of lateral aspect right ankle along course of peroneus longus tendon right ankle. 3-15-15 MRI was completed that showed significant thickening and heterogeneous signal with frayed appearance of the peroneus brevis and peroneus longus. Mild surrounding edema is seen associated with this finding. Given history of peroneus brevis repair, it is unclear if this represents postsurgical change or interstitial tear. Posterior tibialis tendon also demonstrates heterogeneous signal at its insertion. Given lack of significant interval change since prior study, suspect this represents postsurgical change. Dr. Hammersley recommended continued therapy and to follow up in 4 months. On 9-10-15 the Veteran continues to have pain and weakness and was ordered an EMG. EMG was unable to determine degree of peripheral neuropathy or presence of compression neuropathies.

September 2016, Veteran evaluated and treated by a Non-VA Podiatrist. Non-VA MRI was ordered. The Non-VA podiatrist diagnosed the Veteran with right equinovarus foot, sural mononeuritis, posterior tibial tendinitis, an ankle instability. Surgery was performed on for a triple arthrodesis, sural neurectomy, burying sural nerve in bone, and gastrocnemius recession on 10-24-16.

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran continues to have pain and instability and was offered thorough evaluation with podiatry. She has an appointment scheduled on 4-17-18.

Advisement of 1151 claims process and right to file administrative tort claim:    The Veterans was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| SMITH,DEBORAH KAY<br>3771 S SR 9<br>COLUMBIA CITY, INDIANA  46725 | Printed at MARION VA MEDICAL CENTER |

# Progress Notes

```
260-426-5431 ext 71522

/es/ JANA M BAKLE
RISK MANAGER
Signed: 04/11/2018 12:44
```

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
SMITH,DEBORAH KAY
3771 S SR 9
COLUMBIA CITY, INDIANA  46725

VISTA Electronic Medical Documentation
Printed at MARION VA MEDICAL CENTER

| | | |
|---|---|---|
| **CLAIM FOR DAMAGE, INJURY, OR DEATH**<br>**AMENDED** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED<br>OMB NO. 1105-0008 |

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any.<br>(See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Office of General Counsel (U.S. Department of Veterans Affairs)<br>ATTN: Dennis McGuire, Office of Chief Counsel<br>441 Wolf Ledges Parkway, Suite 403<br>Akron, OH 44311 | Ephraim N. Shields<br>5318 Blossom Ridge<br>Fort Wayne, IN 46835 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>07/31/2015 | 7. TIME (A.M. OR P.M.)<br>Not applicable |
|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

The Claimant, Ephraim Shields, was a patient of the VA Northern Indiana Health Care System who received a set of complex surgical procedures on his left ankle and foot by VA doctor, Bradley R. Hammersley, DPM. The surgery itself was performed on 07/31/15. However, the Claimant had no reason to understand or otherwise know that the procedures performed were not warranted and not supported by the medical records and films taken of his left ankle and foot, until the wrongful, negligent, and unnecessary nature of the procedure was disclosed to him by VA officials in a meeting on 01/29/18. (Addt'l information attached)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, and Zip Code).

Not applicable

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

As indicated in §8 above, the negligent and unnecessary surgery performed by VA doctor, Bradley Hammersley, DPM, caused Ephraim Shields injury, both in the form of undergoing the unnecessary surgery itself with related pain, interruption of lifestyle and rehabilitation thereafter, but more significantly by causing him permanent pain, limitation and additional disability which would not have been there but for the unnecessary surgical procedure. (Addt'l information attached.)

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Ephraim Shields | 5318 Blossom Ridge, Fort Wayne, IN 46835 |
| Dr. Bradley Hammersley | Dr. Hammersley provided care to Claimant at both campuses, 2121 Lake |
| (Addt'l witness information attached) | Avenue, Fort Wayne, IN 46805 and 1700 E. 38th Street, Marion, IN 46953. |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 500,000.00 | 0.00 | 500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
|  *Dennis Geisleman legal representative* | 260-420-2001 | 3-21-18 |

| CIVIL PENALTY FOR PRESENTING<br>FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT<br>CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| | | |
|---|---|---|
| Authorized for Local Reproduction<br>Previous Edition is not Usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
| 95-109 | | |

INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident insurance? ☒ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No |
|---|

Not applicable.

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☒ No | 17. If deductible, state amount. |
|---|---|

Not applicable.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)
Not applicable.

| 19. Do you carry public liability and property damage insurance? ☒ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No |
|---|

Not applicable.

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

SF-95                                                      Ephraim N. Shields

**CONTINUATION OF §8:**

Following that disclosure, the Claimant was given instructions for completing an SF-95 which he did on his own. The Claimant's filing was timely in that it occurred promptly but well within two years of discovering that a wrongful and negligent medical procedure had been performed. Subsequent to said filing, Mr. Shields sought legal representation. This submission is an Amended SF-95 submitted by Mr. Shields' representative and intended to replace the original form. Though the original form was compliant and timely, amendment, including amendment of the sum certain requested herein are allowed given that the Federal Agency has not yet reached an administrative determination of this claim.

In 1998 Claimant had a service connected injury to his left foot/ankle. After suffering from pain, instability and stiffness in April 2014, he was referred to the Podiatry Department at the Fort Wayne VA by his primary care physicians. In mid-September 2014, he had x-rays and an MRI completed of his left foot/ankle that showed some arthritis in the ankle joint and unremarkable ligaments other than the anterior talofibular ligament was mildly thickened and the deltoid ligament had an osseus fragment interposed that was replace by scar tissue.

On November 21, 2014, his MRI and x-rays were evaluated by Dr. Hammersley. He noted that Claimant had flat feet and paresthesia tarsal tunnel of the left foot. Dr. Hammersley wrongfully and unethically diagnosed him with left ankle instability, rupture of the anterior talofibular ligament, calcaneofibular ligament, and deltoid ligaments, as well as the syndesmotic ligament; tarsal tunnel syndrome and plantar fasciitis of the left foot. Dr. Hammersley scheduled surgery for July 31, 2015. Neither his MRI, x-rays, nor his radiologist supported the negligent diagnosis of Dr. Hammersley.

On July 31, 2015, Dr. Hammersley breached the standard of care by negligently and unnecessarily performing major surgery on the Claimant's left ankle, despite what turned out to be normal radiologic findings. A tightrope hardware was inserted to repair syndesmosis when the syndesmosis was not injured. The hardware and surgery was completely unnecessary. Anterior talofibular ligament and calcaneofibular ligament also did not need repaired. Human Dermal Graft used on an initial surgery is not usually indicated in this situation and was unnecessary. It was never documented that Claimant ever had any issues related to Plantar Fascia. Tarsal Tunnel Decompression was not indicated.

On a subsequent follow up appointment, Claimant reported to Dr. Hammersley a post-surgical wound on his foot that was never documented. After five months of pain recovery he was released to return to work in December 2015. In July of 2016, Claimant was seen for a follow up appointment by Dr. Hammersley and Dr. Holly Becker and complained of left foot/ankle pain and tingling/pain across the top of his foot. Dr. Becker's assessment was that he had possible sural neuritis of the left foot. She ordered a three phase bone scan and EMG for evaluation of RSD. The bone scan indicated that Claimant developed Chronic Neurological Complex Regional Pain

1

Syndrome 1 involving his left foot/ankle. This condition was caused by the negligent and unnecessary surgery performed by Dr. Hammersley.

Because of the Complex Regional Pain Syndrome, it is now recommended by Dr. Becker that Claimant never have any further surgeries on this left foot/ankle. Therefore, the inserted hardware and other items can never be removed, and Claimant will have pain in his foot/ankle for the rest of his life. The only treatment for Complex Regional Pain Syndrome is physical therapy and pain management.

As a result of this unnecessary surgery and the Claimant's current medical condition of his foot/ankle, he is no longer able to run, which has harmed his daily activities, exercise and also his secondary source of income as a basketball referee/official. Because the condition is not subject to any further surgery or repair, both the pain and this significant limitations are also permanent in nature. It is noteworthy that in the January 29, 2018, meeting with Dr. McBride, Dr. Becker, Nicole Gust, and Jana Bakle, the Claimant was informed of the negligent and unnecessary nature of the medical procedure which has caused him permanent harm.[1] It is the position of Claimant's representative that these are admissions which should bind the agency to accept liability for this Tort Claim.

## CONTINUATION OF §10:

The specific procedures which were unnecessary yet negligently performed anyway are set forth in §8, above, as well within the VA note dated February 5, 2018, referring to a discussion from January 29, 2018. The additional disability limitation and pain referenced above are permanent and chronic in nature and have further disrupted Ephraim Shields' earning capacity in that he is no longer able to run and therefore no longer able to work his secondary source of income as a basketball official/referee.

## CONTINUATION OF §11:

Name:                          Address:
Dr. Holly Becker              2121 Lake Avenue, Fort Wayne, IN 46805
Dr. Wayne McBride            2121 Lake Avenue, Fort Wayne, IN 46805
Jana Bakle                     2121 Lake Avenue, Fort Wayne, IN 46805

---

[1] The VA note regarding this meeting, which is provided as part of this submission, has a typo indicating that it occurred in 2017, in error.

2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) |
|---|---|
| VA Regional Council 575 N. Pennsylvania Indianapolis, IN 46204 | MARSHALL Phillips 611 RIVER ROCK PASS FORT WAYNE, IN 46814 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Please see Attached sheet

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| N/A | N/A | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| N/A | 600,000.00 | N/A | 600,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of person signing form | 14. DATE OF SIGNATURE |
|---|---|---|
| Marshall Phillips | (260) 444-8586 | 21 MAY 2018 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

| 95-108 | NSN 7540-00-634-4046 | STANDARD FORM 95 PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

EXHIBIT 25

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes   ☐ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (it is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95   BACK

# Progress Notes

```
LOCAL TITLE: INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT
STANDARD TITLE: COMMUNICATION OF ADVERSE EVENT
DATE OF NOTE: APR 16, 2018@10:57      ENTRY DATE: APR 16, 2018@10:57:21
     AUTHOR: BAKLE,JANA M          EXP COSIGNER:
     URGENCY:                          STATUS: COMPLETED
```

INSTITUTIONAL DISCLOSURE OF ADVERSE EVENT

Date/Time of Discussion: April 2, 2018

Place of Discussion (Reason for any delay in the disclosure):   Fort Wayne Conference Room

Names and identity of those present:
Dr. McBride- Chief of Staff
Nicole Gust- HSS to COS

Discussion points of the adverse event:

Veteran presented to Dr. Hammersley on 04/18/2014 for right ankle pain. Dr. Hammersley's physical exam noted bilateral excessive inversion of the ankle with tenderness over anterolateral aspect of the ankle. He documented that the x-rays show no acute fractures or dislocations. He diagnosed the patient with Ankle instability bilateral and planned to perform surgery. Patient was consented for Reconstruction of Ankle Ligament with Graft on 05/23/2014 and taken to the OR on the same day for Repair of Syndesmotic Ligament of the Right ankle and anterior talofibular ligament of the right ankle.

Dr Hammersley did not appropriately assess the Veteran. The diagnosis was based from a normal set of foot and ankle x-rays. No advanced imaging was performed to visualize disruption of any of the ankle ligaments. The physical exam does not document an anterior drawer sign to either ankle nor any pain to the syndesmosis.

There was no MRI or CT scan to diagnosis soft tissue injuries. Conservative treatment options (PT, Bracing, or range of motion exercise) were not exhausted prior to surgery.

Tightrope implants was used. Tightrope implants is not indicated for ankle instability. There was no tib/fib syndesmosis evaluation on physical exam or diagnostic studies.

The documented procedure description that was performed was not indicated and performed incorrectly.

```
*       Inaccurate Diagnosis
*       Lack of or inappropriate diagnostic testing.
*       Studies or imaging do NOT confirm surgical diagnosis or findings.
*       Use of inappropriate implants or hardware during surgery.
```

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
PHILLIPS,MARSHALL JR
611 RIVER ROCK PASS
FORT WAYNE, INDIANA  46814

VISTA Electronic Medical Documentation
Printed at FORT WAYNE VA MEDICAL CENTER

Page 1

# Progress Notes

Printed On Apr 25, 2018

Offer of assistance, including arrangements for a second opinion, additional monitoring, expediting clinical consultations, bereavement support:

Veteran had no change in ankle stability after surgery and was offered a thorough evaluation from the podiatry service.

Advisement of 1151 claims process and right to file administrative tort claim:    The Veterans was informed of his rights to file a 1151 disability claim and/or administrative Tort Claim. Financial Compensation after an injury brochure was provided to the Veteran as well as a blank disability claims application and SF-95 Tort Claims form.

Continued communication regarding the adverse event:
The Veteran was given Jana Bakle's contact information to follow up with any additional questions he may have.

Contact information for individual managing the disclosure:
Jana Bakle
260-426-5431 ext 71522


/es/ JANA M BAKLE
RISK MANAGER
Signed: 04/16/2018 10:57

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)
PHILLIPS,MARSHALL JR
611 RIVER ROCK PASS
FORT WAYNE, INDIANA  46814

VISTA Electronic Medical Documentation
Printed at FORT WAYNE VA MEDICAL CENTER

**VA** | U.S. Department of Veterans Affairs
Office of General Counsel

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 369708

**Certified Mail**
August 7, 2018

Vincent J. Colombini
880 Chalet Drive, #203
Berne, IN 46711

RE:   Administrative Tort Claim

Dear Mr. Colombini:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed against the Department of Veterans Affairs pertaining to the surgery performed at the Fort Wayne VA Medical Center on March 23, 2012. Our adjudication of the claim included a review of your medical records and information submitted in support of the claim.

Based on our investigation, it appears your alleged harm occurred on March 23, 2012. A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

**EXHIBIT 26**

**VA**    **U.S. Department of Veterans Affairs**
Office of General Counsel

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 368754

**Certified Mail**

August 1, 2018

Billy McGuire
907 Villa Terrace
Kendallville, IN 46755

     RE:   Administrative Tort Claim

Dear Mr. McGuire:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed against the Department of Veterans Affairs pertaining to the surgery performed at the Fort Wayne VA Medical Center on October 12, 2012. Our adjudication of the claim included a review of your medical records, information submitted in support of the claim, and a review of the claim by a medical reviewer in a different part of the country.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed this claim, provides for monetary compensation when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission. Medical negligence means there was a breach in the standard of care and that breach proximately caused an injury. The standard of care is the level at which similarly qualified medical professionals would have managed the care under the same or similar circumstances. Our review concluded that there was no negligent or wrongful act on the part of an employee of the Department of Veterans Affairs (VA), acting within the scope of his or her employment.

Additionally, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling

     **EXHIBIT 27**

FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel



**U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO  80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

**Certified Mail**

July 30, 2018

In Reply Refer To: GCL 369721

Martin Heifner
1509 County Road 151
Grover Hill, OH  45849

      RE:   Administrative Tort Claim

Dear Mr. Heifner:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed against the Department of Veterans Affairs regarding podiatric surgeries performed at the Fort Wayne VA Medical Center in June 2014 and September 2015.  Our adjudication of the claim included a review of your VA medical records and information submitted in support of the claim.

Based on our investigation, it appears your alleged harm occurred as early as June 2014 and no later than September 2015.  A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.).  Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680.  The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court.  The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)).  In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws.  Some state laws may limit or bar a claim or law suit.  VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

EXHIBIT 28



**U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5810
Fax: (303)914-5849

**Certified Mail**

September 25, 2018

In Reply Refer To: GCL 371609

Robert J. Swisher
P.O. Box 162
Uniondale, IN 46791

> RE:   Administrative Tort Claim

Dear Mr. Swisher:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed against the Department of Veterans Affairs regarding a podiatric surgery performed at the Fort Wayne VA Medical Center on January 8, 2016.  Our adjudication of the claim included a review of your VA medical records, information submitted in support of the claim, and a reviewer by a provider in a different part of the country.

Based on our investigation, it appears your alleged harm occurred on January 8, 2016.  You were informed that additional surgery may be required on your right ankle on March 19, 2017.  A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.).  Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680.  The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court.  The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)).  In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws.  Some state laws may limit or bar a claim or law suit.  VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

*Eric Waage*

Eric Waage
Acting Deputy Chief Counsel

**VA** | U.S. Department of Veterans Affairs
Office of General Counsel

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 371578

**Certified Mail**

September 27, 2018

Derrick S. Link
1816 Richfield Dr.
New Haven, IN 46774

  Re: Administrative Tort Claim

Dear Mr. Link:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding your administrative tort claim. Our adjudication of the claim included a review of your medical records and a review of the claim by a medical reviewer in a different part of the country.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed the claim, provides for monetary compensation when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission. Medical negligence means there was a breach in the standard of care and that breach proximately caused an injury. The standard of care is the level at which similarly qualified medical professionals would have managed the care under the same or similar circumstances.

Our review concluded that there was no negligent or wrongful act on the part of an employee of the Department of Veterans Affairs (VA) acting within the scope of employment that caused you compensable harm. Additionally, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in 28 United States Code Section 2401(b). You have filed your claim outside of the two year statute of limitations.

Accordingly, for the above reasons, we deny the claim.

If you are dissatisfied with the denial of the claim, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling

 **EXHIBIT 30**

FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

**VA** | U.S. Department of Veterans Affairs
Office of General Counsel

Tort Law Group 402
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 371370

**Certified Mail**

September 27, 2018

John D. Gross
11238 Parkers Bay Drive
Ft. Wayne, IN 46845

　　　Re:　　Administrative Tort Claim

Dear Mr. Gross:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding your administrative tort claim. Our adjudication of the claim included a review of your medical records and a review of the claim by a medical reviewer in a different part of the country.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed the claim, provides for monetary compensation when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission. Medical negligence means there was a breach in the standard of care and that breach proximately caused an injury. The standard of care is the level at which similarly qualified medical professionals would have managed the care under the same or similar circumstances.

Our review concluded that there was no negligent or wrongful act on the part of an employee of the Department of Veterans Affairs (VA) acting within the scope of employment that caused you compensable harm. Additionally, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in 28 United States Code Section 2401(b). You have filed your claim outside of the two-year statute of limitations.

Accordingly, for the reasons above, we deny the claim.

If you are dissatisfied with the denial of the claim, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling

EXHIBIT 31

FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel



**VA** | **U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 377017

**Certified Mail**

November 2, 2018

Wilson Kehoe & Winingham, LLC
Attention: W. Kent Winingham, Esq.
2859 North Meridian Street
Indianapolis, IN 46208

    RE:    Administrative Tort Claim of Deborah Fortier

Dear Mr. Winingham:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed on behalf of Deborah Fortier against the Department of Veterans Affairs pertaining to the surgery performed at the Fort Wayne VA Medical Center on November 13, 2015. Our adjudication of the claim included a review of her VA, and non-VA medical records, and information submitted in support of the claim.

As you are aware, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Ms. Fortier's claim accrued on November 13, 2015. Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

**EXHIBIT 32**

RECEIVED NOV 09 2018



**U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 378143

**Certified Mail**

November 6, 2018

Sweeney Law Firm
Attention: David Farnbauch, Esq.
8109 Lima Road
Fort Wayne, IN 46168

      RE:    Administrative Tort Claim of Michael A. Garman

Dear Mr. Farnbauch:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed on behalf of Michael A. Garman against the Department of Veterans Affairs regarding podiatric surgeries performed at the Fort Wayne VA Medical Center on April 13, 2012 and June 12, 2015. Our adjudication of the claim included a review of his VA medical records and information submitted in support of the claim.

Based on our investigation, it appears the alleged harm occurred no later than June 12, 2015. A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

**EXHIBIT 33**



**U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 378004

**Certified Mail**

November 6, 2018

Jerry W. Kittle
17725 Lima Road
Huntertown, IN 46748

      RE:    Administrative Tort Claim

Dear Mr. Kittie:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed against the Department of Veterans Affairs regarding podiatric surgeries performed at the Fort Wayne VA Medical Center on October 26, 2012, April 17, 2013, November 28, 2014, and April 28, 2014. Our adjudication of the claim included a review of your VA medical records and information submitted in support of the claim.

Based on our investigation, it appears your alleged harm occurred no later than April 28, 2014. A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

      **EXHIBIT 34**

# VA

**U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 378000

**Certified Mail**
November 28, 2018

Dennis R. Brown, Esq.
Geisleman & Brown, LLP
919 South Harrison Street
Harrison Place, Suite 100
Fort Wayne, IN 46802

```
RECEIVED
  DEC  3 2018
BY:_____
```

> RE:   Administrative Tort Claim of Carisa A. Snyder

Dear Mr. Brown:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed on behalf of Carisa A. Snyder against the Department of Veterans Affairs pertaining to the surgery performed at the Fort Wayne VA Medical Center on January 16, 2015. Our adjudication of the claim included a review of her VA, and non-VA medical records, and information submitted in support of the claim.

As you are aware, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Ms. Snyder's claim accrued on January 16, 2015. Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

**VA** | **U.S. Department of Veterans Affairs**
Office of General Counsel

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 373221

7015 1520 0002 3718 9001

**Certified Mail**

September 24, 2018

Geisleman & Brown, LLP
Attention: Dennis R. Brown
919 South Harrison Street
Harrison Place, Suite 100
Fort Wayne, IN 46802

     RE:   Administrative Tort Claim of Deborah K. Smith

Dear Mr. Brown:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim Ms. Smith filed against the Department of Veterans Affairs pertaining to the podiatric surgeries performed at the Fort Wayne VA Medical Center on August 14, 2009, January 22, 2010, January 14, 2014, May 5, 2014, and August 22, 2014. Our adjudication of the claim included a review of her VA and non-VA medical records and information submitted in support of the claim. Per your request, a copy of the claim is enclosed.

Based on our investigation, it appears the alleged harm occurred no later than August 22, 2014. A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

Enclosure (1)

RECEIVED
SEP 28 2018
BY:

     **EXHIBIT 36**

**VA**    **U.S. Department of Veterans Affairs**
Office of General Counsel

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 370573

7015 1520 0002 3718 8523
**Certified Mail**

August 16, 2018

Geisleman & Brown, LLP
Attention: Dennis Geisleman, Esq.
919 South Harrison Street
Harrison Place, Suite 100
Fort Wayne, IN 46802

      RE:    Administrative Tort Claim of Ephraim Shields

Dear Mr. Geisleman:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed on behalf of Mr. Ephraim Shields against the Department of Veterans Affairs pertaining to the surgery performed at the Fort Wayne VA Medical Center on July 31, 2015. Our adjudication of the claim included a review of his medical records and information submitted in support of the claim.

As you are aware, a tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Mr. Shields' claim was received on March 27, 2018, more than 2 years after the claim accrued. Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

     **EXHIBIT 37**



**U.S. Department of Veterans Affairs**
**Office of General Counsel**

Torts Law Group (02)
155 Van Gordon Street, Suite 551
Lakewood, CO 80228

Telephone: (303) 914-5820
Fax: (202) 495-6426

In Reply Refer To: GCL 377014

**Certified Mail**

November 8, 2018

Marshall Phillips, Jr.
611 River Rock Pass
Fort Wayne, IN 46814

      RE:   Administrative Tort Claim

Dear Mr. Phillips:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding the above referenced administrative tort claim you have filed against the Department of Veterans Affairs regarding the podiatric surgery performed at the Fort Wayne VA Medical Center on May 23, 2014. Our adjudication of the claim included a review of your VA medical records and information submitted in support of the claim.

Based on our investigation, it appears your alleged harm occurred no later than May 23, 2014. A tort claim is barred unless it is presented within two years after the claim accrues, as provided in section 2401(b), title 28, United States Code (U.S.C.). Accordingly, this claim is hereby denied.

If you are dissatisfied with this decision, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal district court. The claimant must initiate the suit within six months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or law suit. VA attorneys handling FTCA claims work for the Federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

Cynthia Hernandez
Deputy Chief Counsel

     **EXHIBIT 38**